# RAYMOND v. UNITED STATES.*

CRIMINAL LIBEL; PRIVILEGED COMMUNICATIONS; CONSTITUTIONAL LAW;
CRUEL AND UNUSUAL PUNISHMENTS; TRIAL; REOPENING OF CRIMINAL
CASE TO TAKE TESTIMONY.

1. A written or printed statement or article published of or concerning an-
other, which is false and tends to injure his reputation, and thereby
expose him to public hatred, contempt, scorn, obloquy, or shame, is libel-
ous *per se.*

2. A letter to the commissioners of this District, scurrilous in its character,
and making false and unwarranted charges of malfeasance in office, be-
yond the limits of honest criticism, against certain District officials,
is a criminal libel, and is not a privileged communication,—especially
where there is no attempt by the writer to show any foundation for
the charges, and he is shown to have sent copies to all the persons
attacked in it.

3. The sentence of one convicted of criminal libel to imprisonment in the
penitentiary for five years, with hard labor, which is the maximum
penalty prescribed by sec. 815, D. C. Code, 31 Stat. at L. 1323, chap.
854, for such an offense, is not in itself a cruel and unusual punishment
in the sense of the constitutional prohibition against such punishments.
It is not so much the extent as the nature of the punishment that makes
it cruel and unusual.

4. *Quære*, whether it is proper practice in this jurisdiction for the trial
court in a criminal case, after the accused has been found guilty, but
before sentence, to examine into the record of the accused and take
testimony as to his previous character as a law-abiding citizen, or to
the contrary.

5. Where the record in a criminal case brought by appeal to this court by
the accused for review showed that the trial court, upon the arraignment
of the accused for sentence, and over his objection, received in evidence
a certain paper in his handwriting, offered by the prosecution, which
paper the wife of the accused on the trial had testified she signed, it

---

*Cruel and Unusual Punishment.*—For a complete presentation of the
authorities dealing with the constitutional inhibition against cruel and un-
usual punishments, see editorial note to *State ex rel. Garvey* v. *Whitaker,*
35 L. R. A. 561.

was *held* that such reopening of the case, without the presence of the jury, which had been discharged, was error, and the cause was remanded, with directions to vacate the judgment and sentence and all proceedings after verdict.

No. 1526. Submitted May 2, 1905. Decided May 23, 1905.

HEARING on an appeal by the accused from a judgment of conviction for criminal libel, and sentence of the Supreme Court of the District of Columbia. *Reversed.*

THE COURT in the opinion stated the facts as follows:

The appellant, Albert M. Raymond, was indicted and convicted in the supreme court of the District for the publication of a criminal libel against certain officials of the District government, including one of the commissioners, the chief of police, and the building inspector; and, although it is understood that he was recommended to mercy by the jury which found him guilty, he was sentenced to imprisonment for five years in the penitentiary, with hard labor. The libel was contained in a letter addressed to the commissioners of the District, of which he sent copies to all the persons named or referred to in it, and in which he distinctly charged the building inspector and the chief of police, and apparently also the commissioner, with malfeasance in office. The letter is so vulgar and scurrilous in its character that it will not be reproduced in these pages. It must suffice to say of it that in the days of Coke and Blackstone, and even in our own colonial times, it would probably have been punished with flogging or the pillory.

As defendant in the court below, the appellant conducted his own cause without the assistance of counsel or legal advice, although he seems not to be a lawyer. It would appear, however, that, in the preparation of his bill of exceptions, he did have the advice of counsel, or possibly of the judge before whom he was tried; and in this court he has appeared by counsel. The bill of exceptions is in due form of law, and shows certain exceptions taken by the appellant to rulings of the trial justice,

both in respect of the admission of testimony and of instructions given or refused to be given to the jury; and reference will be had hereafter to these rulings as far as necessary.

As already stated, the appellant was found guilty as indicted. He made a motion for a new trial; and upon the argument of this motion he was proceeding to read from a lengthy manuscript matter irrelevant to the motion, when he was restricted by the court to a period of ten minutes for such argument. To this ruling he excepted. Thereupon, according to the record, the following proceedings were had:

"After the overruling of said motion, and when the defendant was arraigned before the bar for sentence, the United States offered in evidence the receipt for a special delivery letter, which receipt was signed in the handwriting of Albert M. Raymond, to which receipt the defendant objected. During the trial the defendant had called as a witness his wife, Mrs. A. M. Raymond, who under questions asked by the defendant, had given testimony tending to prove that she had signed the said receipt for the special delivery letter; whereupon the court overruled the objection to said receipt; to which ruling the defendant then and there excepted."

From the judgment against him rendered upon the verdict of the jury the defendant has appealed to this court.

The appellant appeared in proper person, and with him were *Mr. Andrew A. Lipscomb* and *Mr. Albert Sillers:*

1. The letter on which the alleged libel is based is a privileged communication. It was written by a citizen to the commissioners, public officials, about the misconduct of minor officials, in respect to a public matter in which the defendant himself had an interest. He says, in effect, that Building Inspector Ashford did not attend to his duty; that he played the part of an obstructionist in the issue of permits, and that Major Sylvester connived with him as a delinquent in his duties. This is the head and front of his offending. The right to criticize the action of officials is a British right as old as *Magna Charta*. It

is an American right and demands enlargement, rather than curtailment. "It is the duty which everyone owes to society and to the state, to assist in the investigation of any alleged misconduct, and to promote the detection of any crime." *Eames* v. *Whittaker,* 123 Mass. 342; *Lawler* v. *Earle,* 5 Allen, 22; *Mayo* v. *Sample,* 18 Iowa, 306; *Robinet* v. *Ruby,* 13 Md. 95; *Briggs* v. *Byrd,* 12 Ired. 377. At a town meeting the town assessors were charged with having perjured themselves. In a suit against them in their official capacity, the charge was held privileged. *Smith* v. *Higgins,* 16 Gray, 251. Nor is it necessary that the informant as to misconduct of public officials should be personally aggrieved, for all persons have an interest in the efficiency of our public officers throughout all departments of state. Odgers, Libel & Slander, p. 222. A letter written to the Postmaster General complaining of the misconduct of a postmaster is not libel, if it was written as a bona fide complaint to obtain redress for a grievance that the party really believed he had suffered. *Woodward* v. *Lander,* 6 Car. & P. 548. See also *Marks* v. *Baker,* 28 Minn. 162; *Briggs* v. *Garrett,* 111 Pa. 404; *Storey* v. *Early,* 86 Ill. 461; *Bradley* v. *Heath,* 12 Pick. 163; *Smith* v. *Com.* 98 Ky. 437.

2. The Constitution of the United States, in its 8th Amendment, borrowed from the well-known act of Parliament of 1688, declares "that excessive fines shall not be imposed, nor cruel or unusual punishments inflicted." It is true that the usual construction by the courts of this amendment declares that it is directed not so much against the amount or duration as against the character of the punishment. But it is also true that the sentence of the trial court will be set aside in an extreme case, where the punishment is so severe and out of all proportion to the offense as to shock public sentiment and violate the judgment of reasonable people. 8 Am. & Eng. Enc. Law, 2d ed. p. 440; *State* v. *Becker,* 3 S. D. 29; *People* v. *Whitney,* 105 Mich. 622. Under the Code, sec. 815, the maximum punishment for libel is five years' imprisonment and $1,000 fine. The appellant received the limit of the imprisonment, and we have been unable to find in the history of the libel law in England or America a case

where such a severe sentence has been imposed,—especially where the jury in its verdict added a recommendation for mercy.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. James S. Easby-Smith,* Assistant, for the United States.

Mr. Justice MORRIS delivered the opinion of the Court:

It is unnecessary to consider in detail the assignments of error made by the appellant, or the exceptions upon which they are based. Most of them are frivolous, or seek to raise questions of law which are too well settled to need further elucidation. Only two or three need to be specially noticed.

1. In the first place, it is contended that the alleged libel is no libel at all; and in any event, even if it is of a libelous character in itself, it is a privileged communication, being addressed to the chief executive officers of the District, in reference to alleged misconduct of some of their subordinate officials. But this pretense of privilege is absurd. The scurrilous character of the communication is such as should have precluded it from being addressed to anyone. Scurrility and privilege cannot go together. Moreover, the appellant was careful not to confine it to the commissioners to whom it was addressed, but was sedulous, according to his own admission, to send copies to all the persons attacked in it. While perhaps in one sense this course might be regarded as more honorable than a private and carefully guarded attack upon the integrity of the officials named, it certainly removes the letter from the class of privileged communications. And when, in addition to this, it appears that there was not the slightest attempt to show any foundation whatever, by testimony at the trial, for the assault, it would be a disgrace to our jurisprudence to regard such a communication as privileged. And as for the libelous character of the letter itself, we think that is too plain for argument. As we have said, it distinctly charges the inspector of buildings and the chief of police with malfeasance in office,—a charge for which there is

not even a pretense to adduce proof, or to show that the appellant had any honest belief in it. In one of the latest cases on the subject of libel, that of *Triggs* v. *Sun Printing & Pub. Asso.* 179 N. Y. 144, 153, 66 L. R. A. 612, 103 Am. St. Rep. 841, 71 N. E. 739, following numerous cited cases, libel is defined in the following language: "A written or printed statement or article published of or concerning another, which is false and tends to injure his reputation, and thereby expose him to public hatred, contempt, scorn, obloquy, or shame, is libelous *per se.*" The appellant's publication undoubtedly falls within this category, unless, indeed, its remarkably gross scurrility could be regarded as sufficient to discredit it with all intelligent men. But this is an excuse which cannot be admitted in law.

Freedom of the press and freedom of speech, as guaranteed by the Constitution, are not in issue in this case. No man, however limited his intelligence, could read this lucubration, without feeling that the appellant had exceeded, not only the limits of decency and propriety, but the limits of honest criticism likewise.

2. Nor, in the second place, is there any question here of a violation of the 8th Amendment of the Constitution, which prohibits the infliction of cruel or unusual punishments. The contention of the appellant is that, by the sentence of the court consigning him to five years of imprisonment, with hard labor, a cruel and unusual punishment is sought to be inflicted. But the statute (Code, sec. 815, 31 Stat. at L. 1323, chap. 854) provides that "whoever publishes a libel shall be punished by a fine not exceeding $1,000, or imprisonment for a term not exceeding five years, or both;" and we are not prepared to say that this statute is in violation of the fundamental law. Imprisonment in the penitentiary for five years is not in itself a cruel and unusual punishment in the sense of the constitutional prohibition; and the publication of a libel is an offense which might be, under some circumstances, especially atrocious and deserving of severe punishment. To be given the full extent of the law, as the expression is, in any particular case, may be an act of severity, as indeed it would seem to have been in the present case; but

this is not cruel and unusual punishment such as is prohibited by the fundamental law. Not so much the extent as the nature of the punishment it is that makes it cruel and unusual; although in many cases it may be difficult to distinguish severity from cruelty.

3. But there is a feature of this case, which, although not noticed by either side in argument, we cannot ignore. It is the proceeding which was had after the verdict and when the defendant was called for sentence. At that time the prosecution, for what reason is not entirely apparent, reopened the case, without the presence of the jury,—which, of course, had been discharged,—and adduced testimony in continuation of that which had been adduced at the trial, and this, to contradict the defendant's testimony and to break down his defense. This we must regard as a grave irregularity. It was a trial of the defendant before the court, and not before the jury, to which he was entitled; and he justly objected to it, and reserved his exception to the novel proceeding.

Of course, it is not an unknown proceeding, although an unusual one, for the court, before pronouncing sentence, to receive suggestions, and even to make inquiry, that would result in the mitigation or the aggravation of the punishment to be imposed, —more frequently, however, in mitigation than in aggravation; and the express purpose of the inquiry then usually addressed to the defendant,—whether he has anything to say why the sentence of the law should not be imposed upon him,—has this very end in view. At that time the defendant may plead a pardon, or insanity, or any other matter that would make it improper to give effect in judgment to the verdict of guilty that has been rendered by the jury; or he may protest his innocence, or his previous good character, or his peculiar circumstances, or any other matter that would tend to make his punishment lighter than it might otherwise be. But we have never understood that a cause might be retried at this stage of the proceedings, either in whole or in part, before the court, instead of the jury.

It is very true that the defendant had already been found guilty, and the additional proof now introduced could add no

greater efficacy to the verdict. But it could influence the court against the defendant, and it undoubtedly had that effect in the severity of the sentence that was rendered; and it being a part of the case against him, the defendant had the right to have it passed upon by the jury. We believe that it is not unusual in the English practice, and not unknown in our American practice, that the court after verdict may examine into the prisoner's record, and even take testimony in regard to his previous character as a law-abiding citizen, or the contrary, although we do not hold that such practice is proper in this jurisdiction; but it does not seem to be just to an accused person that issues in the very case in which he has been found guilty should be taken up again before the court, and retried without the presence of the jury. We think that it was an irregularity to do this in the present case, for which the judgment and sentence of the court should be vacated.

The cause will be remanded to the Supreme Court of the District, with directions to vacate its judgment and all the proceedings had after the verdict of the jury, and to proceed *de novo* upon such verdict. And it is so ordered.                    *Reversed.*

A motion for a rehearing by the appellant was denied June 13, 1905, Mr. Justice MORRIS delivering the opinion of the Court:

A motion for rehearing has been made in this case; and while said motion will not be allowed, we deem it proper so far to modify the opinion and judgment heretofore rendered by this court as to provide that only the judgment and sentence of the court below, and the proceedings had in the cause after verdict, shall be vacated, and that the cause shall be remanded for further proceedings therein upon the verdict in accordance with law and the opinion of this court. And it is so ordered.