## ISHKANIAN v. UNITED STATES.
### No. 130.

Municipal Court of Appeals for the District of Columbia.

Dec. 17, 1943.

Jacob Sandler, of Washington, D. C. (Milton Strasburger, of Washington, D. C., on the brief), for appellant.

John P. Burke and Ray L. Jenkins, Asst. U. S. Attys., both of Washington, D. C. (Edward M. Curran, U. S. Atty., of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Appellant pleaded guilty to a charge of maintaining a disorderly house. He was sentenced to serve a term of 180 days' imprisonment and to pay a fine of $500, or, in default of payment, to serve an additional 180 days.

When his plea was entered the court referred the case to the probation officer for investigation and report. Thereafter appellant was examined by the probation officer, who later conferred with the court and made a written report. Neither defendant nor his counsel were present or advised of any further investigation or of the examination of other persons, if any, by the probation officer, nor were they informed as to the contents or nature of his report to the court.

When appellant was called for sentence a plea for probation was made by his counsel upon the ground of appellant's ill health. Thereupon the trial judge, according to the record, "announced that probation officer had recommended imposition of the maximum sentence." Counsel for defendant objected to consideration of this recommendation.. Again we quote: "Thereupon, the Judge, without express ruling upon this objection, sentenced the defendant to serve one hundred eighty days in jail and pay a fine of Five Hundred ($500.00) Dollars." Maximum penalty for keeping a disorderly house is a fine not exceeding $500 or imprisonment not exceeding one year, or both.[1]

Appellant in his appeal insists that it was error for the court to· have received and considered the recommendation of the probation officer as to the penalty to be imposed.

---

[1] Code 1940, § 22—2722.

The statute governing the granting of probation and the appointment and duties of probation officers[2] confers authority on the court to grant probation in certain cases "provided that it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public as well as of the defendant would be subserved thereby."

Section 24—103 defines the duties of probation officers. It provides: "The probation officers shall carefully investigate all cases referred to them by the court, and make recommendations to the court to enable it to decide whether the defendant ought to be placed under probation, and shall report to the court, from time to time as may be required by it, touching all cases in their care, to the end that the court may be at all times fully informed of the circumstances and conduct of probationers."

The only authority expressly conferred is to investigate and to make recommendations to enable the court to decide whether probation should be granted. In this respect the local statute is more restricted than that applicable to federal courts in other jurisdictions (18 U.S.C.A. § 727) providing that a probation officer "shall perform such other duties as the court may direct."[3] But no duty is imposed upon and no authority granted to a probation officer by either statute to advise or recommend to the court, where probation is denied, the extent of punishment to be imposed.

■ Sentencing a person who has pleaded guilty, or is convicted after trial, is a judicial function.[4] Its just and intelligent performance is of the highest importance in the prevention of crime. Its punitive effect upon convicted defendants and the warning it gives to others having criminal tendencies, require severity within the limits fixed by law. On the other hand, the rehabilitation of the guilty and the opportunity to transform a potentially habitual criminal into a useful member of society, bespeak leniency. Family associations and past good conduct may call for like consideration. The delicate balance between these conflicting considerations requires intelligence, wisdom, breadth of vision, and the fullest information in the trial judge, for he is, within the limitations fixed by law, the final arbiter.

■ To properly exercise his judicial function the judge must be informed of many things which do not always develop at the trial of the particular offense and which are a closed book when the defendant has pleaded guilty. The situation requires that he avail himself of all possible sources of information. While the function is judicial, due process does not limit his sources of information to those juridically recognized or require that it be imparted through channels banked by conventional rules of evidence. A defendant is called upon to state why the sentence of the court should not be pronounced, and it is customary that he personally or by counsel furnish such information and arguments as may incline the court to clemency. But the court has the right and the duty to obtain information concerning the defendant from all available sources, whether it be favorable or unfavorable. Thus the Circuit Court of Appeals for the Sixth Circuit in Stephan v. United States, 133 F.2d 87, held that it was not error for the trial judge, before sentencing, to interview the defendant's wife, the defendant with his wife and a friend, representatives of the Federal Bureau of Investigation, the chief probation officer, as well as counsel for appellant and the United States attorneys who prosecuted the case. This it said was "to aid it in the discharge of its duty and in order that the court might feel certain that the sentence to be imposed was a just and proper one."

What information courts may or should obtain through pre-sentence investigation has been discussed in many cases. In this jurisdiction it was held .error for the court at a pre-sentence hearing to permit the prosecuting attorney to submit a document showing that one convicted by the verdict of the jury had offered false testimony at his trial. Raymond v. United States, 25 App.D.C. 555. In Tractenberg v. United States, 53 App.D.C. 396, 293 F. 476, 480, after distinguishing the Raymond case from that under review, the court said: "Here the court did no more than inform

---

[2] Code 1940, §§ 24—101 to 24—105.

[3] We are not concerned here with volunteer probation officers serving without compensation who "shall have such powers and perform such duties as may be assigned to them." Code 1940, § 24—101.

[4] Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, L.R.A.1917E, 1178, Ann.Cas.1917B, 355.

itself as to the previous record of the defendant, not for the purpose of retrying any issue before the jury, but for the purpose of performing one of its own functions, namely, the imposition of sentence. No citation of authorities is required to justify the exercise of such discretion by the trial court."

In no case, here or elsewhere, do we find it said that a judge may seek or accept advice or recommendation as to sentence. Nor do we discover a relaxation of the fundamental rule that full responsibility for the penalty imposed within statutory limits should rest upon the shoulders of the judge, where the law has placed it.

While it may and frequently does occur that when a prisoner is to be sentenced his counsel pleads for leniency and his plea is opposed by the prosecutor, the court is aware of their interest as advocates to present both sides of the issue. But a probation officer is an officer of the court, appointed by the court. Presumedly impartial, his investigation is ex parte, he has no personal knowledge of defendant's life or character, his family ties or environment; his report, under our practice, is confidential, and invades no legal rights of the defendant because it is addressed to the matter of probation which is of grace and not of legal right.[5] Such an officer enjoys the confidence of the court and his recommendations as to probation naturally have weight with the court.

Undoubtedly facts elicited in his investigations should be available to and will be seriously considered by a court determining sentence.[6] Especially is this so in a large city such as Washington, where a large percentage of crime is committed by transients, where the heavy burden of imposing sentences on persons convicted of or who have pleaded guilty to criminal offenses is borne by judges assigned to the criminal courts, laboring under the constant pressure of days devoted to a continuous succession of trials of current cases.[7]

■ But a recommendation by a probation officer as to the sentence to be imposed is not merely unauthorized by the statute; it is an infringement upon the judicial function of the court which the officer has no right to exercise and the judge no right to permit. Were we to approve the procedure followed here it might well give rise to a practice undermining fundamental principles, endangering the respect accorded the judgments of our courts. The defendant by his counsel asserts with apparent and understandable sincerity that a penalty which may or may not in fact be excessive, as to which we express no opinion, resulted from the recommendation of a subordinate officer of the court. If such a practice were to prevail, if that contention could often be made plausibly, all judgments of the trial court might be put into question and lose public respect.[8]

■ Under the circumstances of this case we hold that the sentence imposed by the trial court should be set aside and defendant re-sentenced upon his plea of guilty. In Raymond v. United States, supra, this procedure was adopted when it was held that the trial court had entertained improper evidence in a pre-sentence hearing, without comment on the effect of this evidence upon the penalty imposed. Here the reference by the trial judge to the probation officer's recommendation of the maximum penalty indicated that it had made an impression on his mind. His failure to rule on counsel's objection to its consideration indicated that he regarded it as a proper aid to his own decision. Under these circumstances we cannot assume that his judgment was uninfluenced and was his own considered opinion based solely on information as to the pertinent facts.

■ In remanding for re-sentence, we wish it clearly understood that we are not indicating that the sentence imposed was excessive. The extent of the sentence, so long as within the limits prescribed by law, is a matter entrusted to the judgment of the trial court. Upon re-sentence the trial court is free to impose such sentence as in its independent judgment it finds proper, whether such sentence be the same as that originally imposed, or greater or less.

Reversed and remanded for re-sentence.

5 Evans v. District Judge, 6 Cir., 12 F.2d 64.

6 Zeff v. Sanford, D.C.N.D.Ga., 31 F. Supp. 736, affirmed 5 Cir., 114 F.2d 1018.

7 In the report of the Attorney General's Survey of Release Procedures (1939) Vol. 2, P. 442, it is said: "Most judges have neither the time nor the training to collect the types of case-history material that they should have before sentence is imposed. They should be provided with well trained probation officers who can give them such assistance by means of carefully prepared pre-sentence investigation reports."

8 See our opinion in Stover v. District Court, D.C.Mun.App., 32 A.2d 536.