## BATTAGLIA v. UNITED STATES.
### No. 6609.

United States Court of Appeals
Fourth Circuit.

Argued June 16, 1953.

Decided July 16, 1953.

W. T. 'Joyner, Jr., Raleigh, N. C., for appellant.

Thomas F. Ellis, Asst. U. S. Atty., Raleigh, N. C. (Charles P. Green, U. S. Atty., Raleigh, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The important question in this case is whether, upon the trial of a person on the charge that he has violated 18 U.S.C.A. § 2312, by transporting a motor vehicle in interstate commerce knowing the same to have been stolen, it is permissible for the judge to charge the jury that possession by the defendant of the stolen car shortly after the commission of the theft and transportation gives rise to a reasonable inference of guilt of knowingly transporting the stolen vehicle in the absence of an explanation justifying the possession.

Victor Battaglia, the appellant, and Thomas John De Leo were indicted for transporting in interstate commerce on October 17, 1952 a Chevrolet automobile from Brooklyn, N. Y. to Raleigh, N. C. When arraigned Battaglia pleaded not guilty, and De Leo was permitted to enter a plea of nolo contendere. The evidence at the trial may be summarized as follows:

A Chevrolet car was stolen on October 17, 1952 in Brooklyn, New York, and was recovered on October 20, 1952 at an automobile auction in Raleigh, North Carolina, in the possession of Robert Gillis, a 19 year old filling station attendant in that city. He testified that at 1 P. M. on that day he was approached by Battaglia and asked if he would like to earn $10 for half a day's work, and upon giving his assent was told to meet Battaglia in front of the Raleigh Hotel. He complied and was thence taken by Battaglia to a room in the Andrew Johnson Hotel where he met De Leo; that De Leo gave him what purported to be the title papers to the automobile and requested him to sell it for $1400 or $1500 at Mann's Auto auction in Raleigh; that he acceded to the request and left the hotel with Battaglia who pointed out the car on the street and gave him the keys; that he then drove the car to the auction but before he had a chance to sell it he was accosted by an F. B. I. agent whose suspicions were aroused after he had compared the numbers of the automobile on the registration card with the numbers on the motor. Gillis explained to the agent how he came in possession of the car, and then accompanied the agent to the Andrew Johnson Hotel. The agent found De Leo in Room 407 and arrested him after he admitted that the car was stolen. De Leo also admitted that he had employed Gillis to sell the car and paid him $10 in the presence of the agent. It was stipulated at the trial that the car had been stolen.

About a month later, the agent having information that led him to believe that Battaglia was the man who had brought Gillis to De Leo on October 20, secured a photograph of Battaglia and submitted it with others to Gillis and to an elevator man and to a desk clerk in the Andrew Johnson Hotel, and each of them picked out the photograph of Battaglia as the picture of the man who had been in company with Gillis, a colored youth, in the hotel on October 20. Each of the three testified to this effect at the trial.

A registration card at the Andrew Johnson Hotel showed that Room 408, in which De Leo was found by the agent, was in the name of Andrew Malta of Brooklyn, and De Leo admitted that he had used this assumed name. He testified as a defendant that on October 18, 1952 he left New York to hitchhike his way to Georgia in quest of employment; that he was picked up in New York by a man who was driving the stolen car and gave his name as Larry and said he was going to sell the car; that they arrived at Raleigh on October 19, and registered at the Raleigh Hotel in Room 417. The registration card for the room showed three names, Andrew Malta, the assumed name of De Leo, and also Joe Graffaguno and Anthony Martino. Which of the two latter names was used by Larry, and why three names appeared on the card De Leo was unable to say. He said that he arranged with Larry to sell the car with the aid of Gillis, and that he had never seen Battaglia before the day of the trial.

Battaglia testified that because of scarcity of longshoremen work in Brooklyn he made up his mind to go into the business of transporting cars; that he left Brooklyn at 4 P. M. on October 19th and drove to Raleigh with one Joe Fervola of Brooklyn in a Pontiac car owned by Fervola; that they reached Raleigh at 4:30 A. M. on October 20th and registered in the Raleigh Hotel in Room 321 under the names of Victor Marloca and Joe Fervola; that he used an assumed name because he had previously been in trouble in Raleigh; that at 10:30 A. M. on October 20th they drove the Pontiac to Mann's auto auction to sell it but not liking the prices that the cars were bringing at the sale they left Raleigh at 1:30 P. M. and drove back to New York in the Pontiac, arriving at 4:30 P. M. the next day. Battaglia also testified that he had had nothing to do with the transportation or sale of the Chevrolet car.

Upon this evidence the District Judge overruled a motion for a directed verdict in favor of Battaglia and submitted the case to the jury. The judge pointed out in his charge that the first question for the consideration of the jury was the identification of the defendant as the man who brought

Gillis to De Leo and showed Gillis the stolen car and gave him the keys so that he might drive it to the auction; and that if the jury were not convinced beyond a reasonable doubt on this point, they should acquit the defendant.

The jury were further charged that even if they were satisfied beyond a reasonable doubt on the question of identity, it did not necessarily follow that the defendant was guilty of the crime charged, but that in order to convict him, the jury must also find beyond a reasonable doubt that the car was transported from New York to North Carolina either by the defendant or by someone with whom he was acting in concert or was aiding and abetting; and also that the defendant knew that the car was stolen at the time it was transported.

Commenting on the government's contention that the only reasonable inference to be drawn from the defendant's possession in North Carolina of the car which had been stolen in New York and transported to North Carolina, was that he had transported it with guilty knowledge, the judge charged the jury as follows:

"Now, I charge you, gentlemen of the jury, that the mere fact that the defendant was found in possession of this stolen car three days after it was stolen in Brooklyn does not raise any presumption that he stole it or that he transported it but it is a circumstance for you to consider along with all the other circumstances with the idea of finding what the truth about it is; there is no presumption which arises from the mere possession of the stolen automobile but the law is that the possession of the fruits of a crime recently after its commission—in this case three days afterward in the possession of the automobile in question—in the absence of an explanation justifying its possession warrants an inference pointing toward guilt and that is the extent of it, it warrants an inference pointing toward guilt."

* * * *

"Now, the evidence, gentlemen of the jury, as to whether he brought it, transported it from Brooklyn, and whether he knew it was a stolen car, is what the law calls circumstantial evidence. In a case of circumstantial evidence it is not sufficient that the evidence be consistent with guilt but it must be inconsistent with any reasonable theory or hypothesis of innocence, so if you get to this phase of the case, having determined the question of identity against the defendant, you will consider whether or not all of these proven circumstances taken together can exist and be true upon any reasonable hypothesis of the defendant's innocence, and unless you find they are thoroughly and absolutely inconsistent with any reasonable theory or hypothesis of guilt then you should acquit the defendant because you would have in this case what the law calls a reasonable doubt and, as I have already said several times before in this Charge, the defendant is entitled to that and should be acquitted wherever a reasonable doubt exists."

■ The defendant contends that this charge was erroneous because there was no evidence that the defendant transported or aided or abetted in the transportation of the car in interstate commerce. The defendant suggests that the evidence may be sufficient to justify the finding that he violated § 2313 which makes it a crime to receive or sell any motor vehicle moving in interstate commerce knowing it to have been stolen. In this respect the defendant gives heed to the well established rule that the unexplained possession of stolen property shortly after the theft is sufficient to justify a finding that the possessor not only knew that the property was stolen but that he himself was the thief. Dunlop v. United States, 165 U.S. 486, 502, 17 S.Ct. 375, 41 L.Ed. 799; McNamara v. Henkel, 226 U.S. 520, 524–525, 33 S.Ct. 146, 57 L.Ed. 330; Wilson v. United States, 162 U.S. 613, 617, 619, 620, 16 S.Ct. 895, 40 L.Ed. 1090; Rosen v. United States, 2 Cir., 271 F. 651; Janow v. United States, 5 Cir., 141 F.2d 1017.

■ Nevertheless, relying upon the decision in Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350, he contends that the possession of a motor vehicle which had been recently stolen and transported in interstate commerce gives rise to no inference that the possessor participated in the transportation. We do not think that that decision requires us to hold that possession of a stolen vehicle in the state to which it has been recently transported gives rise to no inference that the possessor participated in the transportation, in the absence of some explanation on his part. The decision does not repudiate the rule established by a myriad of decisions that possession of recently stolen goods will support an inference that the possessor is guilty of the theft; and if this inference be tenable, it is equally reasonable to infer that the supposed thief engaged in the removal of the stolen property to the point where it was found in his possession. It seems absurd to us to say that the possession of a stolen car in the state of destination gives rise to an inference that the possessor stole the car in the state of origin, but permits no inference that he was a party to the asportation.

In Bollenbach v. United States, supra, the defendant was indicted in two counts: (1) for transporting securities in interstate commerce, knowing them to be stolen, and (2) for conspiring to commit that offense. The jury at the end of a protracted trial gave prolonged consideration to the case and, as it subsequently transpired, came to the conclusion that the defendant was not guilty on the main charge since the evidence of his participation in the transportation was very slight. They were in doubt, however, as to the conspiracy count in view of the evidence that the defendant participated in the sale of the securities after their transportation; and they returned to the court room to inquire of the judge whether the defendant was guilty on the conspiracy count if he was aware that the bonds which he disposed of were stolen. In response the judge told the jury that the possession of the bonds by the defendant shortly after the theft justified the conclusion that he knew that they were stolen and also that this possession raised a "presumption" that the defendant sold and transported them. The Supreme Court, 326 U.S. page 613, 66 S.Ct. page 405, held that under the circumstances this charge meant that the jury was at liberty to find the defendant "guilty of a conspiracy to transport stolen notes, if he joined in their disposal after the transportation had ended"; and 326 U.S. page 610, 66 S.Ct. page 406, that possession of stolen goods does not raise any presumption that they have in fact been transported in interstate commerce. The court also criticized the trial judge's use of the word "presumption" which the court said involved "conceptions to which not even judges always bring clear understanding."

This decision has not been understood by our colleagues in the appellate courts as a directive that the inference of guilt from the unexplained possession of stolen goods, which has so long been entertained by the courts, may no longer be tolerated. The ancient rule is still considered in effect. See, Morandy v. United States, 9 Cir., 170 F.2d 5; United States v. Guido, 2 Cir., 200 F.2d 105.

■ With the Bollenbach case before us we ourselves find no error in the charge of the court in the pending case. It must be kept in mind that the theft and transportation of the car were abundantly proved by evidence other than the possession of the car in North Carolina by the defendant; that according to his own story he came to North Carolina from New York, two days after the theft, intending to sell another car; that he registered under an assumed name at the same hotel as his co-defendant who does not deny his guilt; that he instructed an innocent youth to sell the stolen car; and speedily left the city when the car was seized by the government agent. In view of all the evidence the judge was on safe ground when he told the jury that although mere possession by the defendant of the recently stolen car did not raise any "presumption" that he had stolen or transported it, yet it was a circumstance to be considered with all the other evidence in

the case in determining whether the defendant was party to the transportation of the car, knowing it to have been stolen.

The judgment of the District Court is Affirmed.