Herbert W. BRAY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16835.

United States Court of Appeals District of Columbia Circuit.

Argued April 4, 1962.

Decided May 24, 1962.

Supplemental Opinion July 26, 1962.

744

Mr. John A. McGuinn, Washington, D. C. (appointed by this court) for appellant.

Mr. William H. Collins, Jr., Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Nathan J. Paulson, and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, BAZELON and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

On November 4, 1960, appellant was arrested in the District of Columbia while driving a 1960 Lincoln Continental Mark V convertible automobile. The car had been stolen six days earlier in Greensboro, North Carolina. After his arrest, appellant was apparently interrogated at the Auto Squad of the Metropolitan Police Department between about 7:45 a. m. and 12:50 p. m.,[1] when he was brought before a Commissioner for the preliminary hearing to which he was entitled "without unnecessary delay." Fed.R.Crim.P. 5(a), 18 U.S.C. During the questioning, appellant complained of stomach pains—a complaint which he subsequently reiterated to the Commissioner, who recommended medical treatment. After the preliminary hearing, appellant was questioned for a half to three quarters of an hour longer. Finally, he signed a statement admitting that he had traveled from Washington, D. C. to Greensboro, North Carolina, on October 29, 1960, had stolen the Lincoln Continental automobile in which he was arrested, and had transported it back to the District.

Appellant was subsequently indicted for transporting a motor vehicle in interstate commerce "knowing the same to have been stolen." 18 U.S.C. § 2312 (1958). Since appellant was indigent, the District Court appointed counsel who promptly obtained an order for a mental examination at St. Elizabeths Hospital to determine appellant's competence to stand trial. D.C.Code § 24–301 (1961). Pursuant to that examination, appellant was found incompetent. About six months later, the hospital certified that his competency had been restored and he was ordered to stand trial.

At trial, the Government presented testimony relating to the theft of the car and the circumstances of appellant's arrest. It also introduced Bray's written confession under circumstances described later. Notwithstanding the determination of mental incompetency after indictment, Bray did not raise the defense of insanity. Instead he relied solely on his wife's testimony that he had been in Washington, D. C., on October 29, 1960, when the car was stolen. The jury found him guilty, and he was sentenced to six to eighteen months' imprisonment. Shortly after imposition of sentence, appellant was transferred to St. Elizabeths Hospital, presumably because he was mentally ill. He has now served the minimum sentence and is still in St. Elizabeths.

Upon conviction appellant applied to the District Court for leave to appeal in forma pauperis. The court marked his application: "Denied—not good faith, i. e., no substantial question, and in my judgment frivolous." The United States Attorney opposed the application on the ground that the questions presented were "patently frivolous." Appellant thereupon applied to this court. We granted leave to appeal and appointed new counsel to represent appellant.

Three grounds for reversal are urged: (1) that the evidence at trial was insufficient to convict in that the Government failed to corroborate Bray's confession with independent evidence tending to establish each element of the crime; (2) that the trial court improperly instructed the jury that they might·infer from appellant's unexplained possession of the stolen car that he had committed the offense charged; and (3) that the trial court erroneously refused to grant appellant a hearing out of the presence of the jury on the question of the admissibility of his confession. We discuss these contentions below.

---

1. The record does not show when that interrogation began or whether it was continuous. See note 15 infra.

■ (1) Appellant contends that our decision in Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120, affirmed on other grounds, 302 U.S. 220, 58 S.Ct. 180, 82 L.Ed. 209 (1937), requires corroboration of his confession "embracing substantial evidence of the *corpus delicti* and the whole thereof." 68 App.D.C. at 115, 94 F.2d at 240. Since Forte, however, the Supreme Court has held in Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), that "corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. * * * It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." 348 U.S. at 93, 75 S.Ct. at 164. We think that under Opper and subsequent cases in this court,[2] appellant's possession of the stolen car coupled with his failure to show a lawful transfer was sufficient corroboration since it tended "to establish the trustworthiness of the statement."[3] Hence we conclude that there was enough evidence to sustain the jury's verdict.[4]

(2) Appellant complains that the trial court erred in instructing the jury, over objection, that they might *infer* from appellant's possession of the automobile shortly after it was stolen that he was guilty of the offense charged. The instruction reads:

"There is another principle of law which you have for your considera-

tion in this case and that is the principle known as possession of recently stolen goods. If you find that this defendant was in possession of this automobile, Lincoln Continental, and that that vehicle had been recently stolen, and it had been stolen in North Carolina, and you further find it to be in the District of Columbia, and you further find that it was in fact being driven by this defendant, then you may, if you see fit to do so, infer therefrom that this defendant is guilty of the offense with which he is charged, unless you find that he has explained to your satisfaction his possession of the vehicle in question on the date in question and under the circumstances stated. The Court states to you that you are not required to so infer from the facts, but you may infer unless he has explained, or the defense has explained to your satisfaction his possession in the District of Columbia on the date in question.

Now there is another principle of law. You are not to infer any guilt on the part of the defendant by failure of the defendant to take the stand. He is not required to take the stand."

Appellant's attack rests on Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

At Bollenbach's trial for transporting securities in interstate commerce knowing them to have been stolen,[5] the trial court charged the jury:

"I say to you that if the possession was shortly after the bonds were stolen, after the theft, it is sufficient to justify the conclusion by you jurors of knowledge by the possessor that the property was stolen. And

2. See, e. g., Inman v. United States, 100 U.S.App.D.C. 150, 243 F.2d 256 (1957), cert. denied, 358 U.S. 888, 79 S.Ct. 132, 3 L.Ed.2d 116 (1958); Fountain v. United States, 98 U.S.App.D.C. 389, 236 F.2d 684 (1956); Cash v. United States, 104 U.S.App.D.C. 265, 261 F.2d 731 (1958), vacated and remanded on other grounds, 357 U.S. 219, 78 S.Ct. 1365, 2 L.Ed.2d 1361 (1958), affirmed on remand, 105

U.S.App.D.C. 154, 265 F.2d 346, cert. denied, 359 U.S. 973, 79 S.Ct. 892, 3 L.Ed.2d 841 (1959).

3. Opper v. United States, 348 U.S. at 93, 75 S.Ct. at 164, 99 L.Ed. 101.

4. See McAbee v. United States, 111 U.S. App.D.C. 74, 294 F.2d 703 (1961).

5. 48 Stat. 794 (1934).

just a moment—I further charge you that possession of stolen property in another State than that in which it was stolen shortly after the theft raises a presumption that the possessor was the thief and transported stolen property in interstate commerce, but that such presumption is subject to explanation and must be considered with all the testimony in the case. [326 U.S. at 609, 66 S.Ct. at 403.]"

When that case reached the Supreme Court, the Government conceded that the presumption "offended reason" and was not a "fair summary of experience." [6] The Court agreed, held the instruction "simply wrong," [7] and reversed the conviction.

On its face, Bollenbach would appear to condemn the charge attacked here. But time has not treated the Bollenbach decision kindly. Repeatedly, courts of appeals have sustained similar instructions in the face of vigorous protests based upon Bollenbach. See, e. g., Battaglia v. United States, 205 F.2d 824 (4th Cir., 1953); Prince v. United States, 217 F.2d 838 (6th Cir., 1961); Morandy v. United States, 170 F.2d 5 (9th Cir., 1948), cert. denied 336 U.S. 938, 69 S.Ct. 741, 93 L.Ed. 1097 (1949). And the Supreme Court has done nothing to disturb the interment of its decision. Hence Bollenbach's vitality is doubtful, to say the least.

■■ Typical of the courts of appeals' treatment of the decision is Judge Soper's statement in Battaglia v. United States, 205 F.2d 824, 827 (4th Cir., 1953):

"We do not think that that decision requires us to hold that possession of a stolen vehicle in the state to which it has been recently transported gives rise to no inference that the possessor participated

in the transportation, in the absence of some explanation on his part. The decision does not repudiate the rule established by a myriad of decisions that possession of recently stolen goods will support an inference that the possessor is guilty of the theft; and if this inference be tenable, it is equally reasonable to infer that the supposed thief engaged in the removal of the stolen property to the point where it was found in his possession. It seems absurd to us to say that the possession of a stolen car in the state of destination gives rise to an inference that the possessor stole the car in the state of origin, but permits no inference that he was a party to the asportation."

The courts have usually read Bollenbach to prohibit a *presumption,* but not an *inference,* that one found in possession of property shortly after it was stolen was the thief. Compare Barfield v. United States, 229 F.2d 936 (5th Cir., 1956), with Herman v. United States, 289 F.2d 362 (5th Cir.), cert. denied 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). The distinction between a presumption and an inference is subtle, but not unreal. A presumption, sometimes called a presumption of law, is an inference which the law directs the jury to draw if it finds a given set of facts; an inference is a conclusion which the jury is *permitted,* but not compelled, to draw from the facts. While the terminology varies, the distinction has been recognized by many authorities.[8] We conclude that Bollenbach does not bar an inference from possession of recently stolen goods that the possessor has stolen and transported them.

Here the trial court did not instruct the jury that there was a *presumption* that one in possession of recently stolen

6. 326 U.S. at 611, 66 S.Ct. at 404.

7. Id. at 613, 66 S.Ct. at 405.

8. See, e. g., Barfield v. United States, supra; United States v. Segelman, 86 F. Supp. 114 (W.D.Pa.1949); 9 Wigmore,

Evidence §§ 2490–91 (3d ed. 1940); 1 Jones, Evidence § 10 (5th ed. 1958); 31 C.J.S. Evidence § 115 (1942). Cf. Annot., 56 A.L.R.2d 1309, 1360 (1956). But see 20 Am.Jur. Evidence § 162 (1939).

goods was the thief. Rather, it said "you may if you see fit to do so *infer* \* \* \* that this defendant is guilty unless you find that he has explained \* \* \* his possession of the [stolen vehicle]." (Emphasis supplied.) We think this did not mislead the jury into believing that it was *required* to infer guilt from possession.

■ Appellant also contends that the instruction erroneously [9] placed the burden of explaining possession upon him. But the jury was not told to draw the inference *unless* appellant had failed to explain how he acquired the car. Rather, the instruction properly noted that, although appellant's guilt *might* be inferred from his possession of the stolen car, the jury could not draw such an inference if he had satisfactorily explained his possession. Moreover, immediately after explaining the inference based upon possession, the instruction went on to state that the jury should not infer guilt from appellant's failure to take the stand. We think that, fairly read, the instruction did not place the burden of explaining possession upon appellant.

■ (3) We agree with appellant, however, that the trial court should have held a hearing out of the presence of the jury on the question whether appellant's written confession introduced at trial was voluntary. The Government concedes, as it must, that appellant is entitled to such a hearing upon request.[10] But it argues that the request was not properly made.

The request for a hearing occurred in these circumstances. Just after the Gov-

ernment called its second witness, the arresting officer, appellant objected to his testimony. At the bench, appellant's court-appointed counsel told the court:

"Your Honor, on all matters concerning the arrest and the stopping of the defendant while he was operating the 1960 Lincoln, I would ask the court to hear the testimony out of the presence of the jury to determine, first, whether or not there was probable cause for the arrest and presumably the government is going to introduce into evidence a confession which was obtained from the defendant, although I have not seen the confession, and *I think the court should hear the evidence with respect to the admissibility of all this evidence without the presence of the jury.*" [Emphasis supplied.]

The court replied:

"I think that on the facts which were related to me that I will proceed, subject to your objection. If the situation should present something which would be improper or prejudicial as distinguished from evidence against the defendant, I would certainly entertain any motion that you might deem appropriate to bring embracing a mistrial, but under the facts, as I have understood them, I think we will proceed."

"You are protected on the record, sir."

We think this colloquy fairly reflects a request for and a denial of a hearing on the voluntariness of the confession.[11]

■ The Government contends that the motion should have been renewed

---

9. United States v. Lefkowitz, 284 F.2d 310 (2d Cir. 1960).

10. Wright v. United States, 102 U.S.App. D.C. 36, 250 F.2d 4 (1957); McAfee v. United States, 70 App.D.C. 142, 105 F. 2d 21 (1939); Id., 72 App.D.C. 60, 111 F.2d 199, cert. denied, 310 U.S. 643, 60 S.Ct. 1094, 84 L.Ed. 1410 (1940); Catoe v. United States, 76 U.S.App.D.C. 292, 131 F.2d 16 (1942).

11. Appellant did not assert below or on appeal that the confession was inadmissible because it was the product of an unnecessary delay in bringing him before a committing official. See McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L. Ed.2d 1479 (1957); Upshaw v. United States, 335 U.S. 410, 413, 69 S.Ct. 170, 93 L.Ed. 100 (1948).

when the confession was later offered in evidence.[12] But the trial court knew when it denied the request that the Government planned to introduce Bray's written confession.[13] The court did not indicate that the motion was premature and might be renewed when the confession was later offered in evidence. Instead, it told counsel the trial "would proceed subject to your objection" and "you are protected on the record," and suggested a motion for mistrial would be the appropriate means of reviving the issue of the confession's admissibility. Counsel could reasonably have inferred from these statements that a renewal of his request for a hearing was unnecessary.

The Government contends alternatively that appellant was not prejudiced by the trial court's refusal to hold a hearing outside the presence of the jury. This contention must be viewed in the light of the testimony of Government witnesses that appellant said he was suffering from a stomach ailment during his interrogation, that he had been held nearly five hours before being brought before a Commissioner, that the Commissioner recommended medical treatment,

and that thereafter appellant was interrogated for half to three quarters of an hour before he signed the confession.[14] And, as recited earlier, appellant was found mentally incompetent to stand trial pursuant to an examination ordered shortly after indictment.[15]

But the Federal agent who elicited Bray's confession testified before the jury that no promise, force or coercion was used. He testified further that appellant did not ask that the interrogation be discontinued on account of his upset stomach and that the confession "was not given reluctantly or with the indication that he was a sick man." The Government urges that this evidence of voluntariness, which would have been presented in the hearing outside the presence of the jury, precluded the court from holding the confession involuntary as a matter of law and would have required submission of the issue to the jury no matter what evidence the appellant may have presented at the hearing. Since the issue went to the jury under proper instructions, the Government concludes that the failure to hold the requested hearing was not prejudicial.

12. When the confession was offered, appellant's counsel objected, but sought only the right to cross-examine the F.B.I. agent who had elicited it.

13. During the cross-examination of the arresting officer, the court told appellant's counsel: "You might be well advised not to [inquire into defendant's statements to the arresting officer before he was booked] because from my understanding of the case, the District Attorney is not going to bring any admission in except the admissions to the FBI after he was back in jail." Those admissions were embodied in the written confession later introduced.

14. Upon cross-examination, the Federal agent to whom we have referred was asked if Bray had complained of stomach trouble and requested medical attention while being interrogated "before or after you went to the United States Commissioner." The agent replied: "I believe both, sir." This suggests that appellant was interrogated after arrest and before he was brought before a Commis-

sioner. Apparently appellant made damaging admissions during that interrogation since, as we have pointed out, the court cautioned appointed counsel not to inquire into what had occurred. But the record is silent on the events during the five-hour period preceding arraignment. That period is important, for if the pre-arraignment admissions were coerced and if they produced the post-arraignment confession, it may have been inadmissible. See Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944) (dictum); Fournier v. Puerto Rico, 281 F.2d 888 (1st Cir. 1960) cert. denied, 364 U.S. 915, 81 S.Ct. 275, 5 L. Ed.2d 228 (1961); Burwell v. Teets, 245 F.2d 154 (9th Cir. 1958) (dictum), cert. denied, 355 U.S. 896, 78 S.Ct. 271, 2 L. Ed.2d 194 (1957); United States v. Charles, 25 Fed.Cas. 409 (No. 14786, C.C.D.C.1813). Cf. Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954).

15. See Fikes v. Alabama, 352 U.S. 191, 193, 196, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957).

Necessarily, that argument implies that a trial court's determination of admissibility can be based solely on testimony for the prosecution. Two early cases [16] in this circuit support that view, but we think they are no longer authoritative. This appears from United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48 (1951), where the Supreme Court reversed a conviction because the accused was not permitted to testify in the absence of the jury to the circumstances under which he had confessed, and from our own cases requiring such a hearing as a matter of right.[17] We think a trial court's determination that a confession is not involuntary as a matter of law must be based on testimony—or the opportunity to present testimony—of both the prosecution and the defense. We do not know, of course, what evidence appellant would have presented had he been granted the opportunity.

This case is distinguishable from Tyler v. United States, 90 U.S.App.D.C. 2, 193 F.2d 24 (1951), cert. denied 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326 (1952). There the defendant chose to take the stand before the jury. He testified that police officers had slapped his face, broken a tooth, twisted the handcuffs on his wrist, denied him food or water and threatened to arrest members of his family unless he confessed. Finally, he testified, he "gave up" and confessed. Government witnesses contradicted his statements. Thus the evidence that would have been offered by both sides at the hearing, had it been held, was spread across the record. We could therefore determine that the confession was not involuntary as a matter of law, and that the issue of voluntariness was properly submitted to the jury.

Here, in sharp contrast, appellant exercised his constitutional right not to testify. He was not required to waive that right in order to obtain a determination by the court. But because he did not testify, the court did not explore the issue of voluntariness and, in particular, the matters relating to appellant's physical and mental condition during the interrogation. We cannot say what the result of such an inquiry would have been. Hence we cannot say the refusal to conduct it was not prejudicial.

■ Having concluded that appellant should have been accorded a hearing outside the presence of the jury, we would ordinarily remand the case to the District Court with instructions to hold the hearing and to grant a new trial if it found the confession involuntary.[18] But the disposition of this case presents a dilemma. Appellant has already served his minimum sentence and is presently in St. Elizabeths Hospital on account of his mental condition. Any hearing we order may therefore have to be postponed if, as is possible, appellant is not now competent to participate. If appellant's competence is eventually restored and he proves his confession was inadmissible, a new trial may nevertheless not take place until after he would otherwise have been released. Under these circumstances, we are reluctant to dispose of this case without giving both parties an opportunity to present their views concerning its proper disposition. Accordingly, we will withhold disposition of this appeal to await memoranda to be filed by appellant within ten days and the appellee five days thereafter.

So ordered.

### Supplemental Opinion

■ Memoranda filed pursuant to our opinion of May 24, 1962, inform us that appellant will shortly be transferred from St. Elizabeths Hospital to the District jail, and that he is now mentally competent to participate in further proceedings. His counsel points out, however, that appellant has already been in

16. Brady v. United States, 1 App.D.C. 246 (1893); Hardy v. United States, 3 App. D.C. 35 (1893).

17. Cases cited note 11 supra.

18. Cf. Masiello v. United States, 113 U.S. App.D.C. —, 304 F.2d 399.

custody twenty months (including a period prior to imposition of his six to eighteen-month sentence); that he is now eligible for parole; and that, according to the provisions of 18 U.S.C. § 4161 (1958), he will be mandatorily released on October 12, 1962. Counsel therefore urges that further proceedings would be unjust and requests that we direct dismissal of the charges.

Justice strongly commends this request. But we agree with the Government that orderly process requires that consideration of this request await the District Court's determination whether appellant's admissions were voluntary. It assures us that if "the District Court should hold the confession to have been obtained involuntarily, we will then reappraise the situation * * *." We therefore remand this case for further proceedings in accordance with the views expressed in our opinion of May 24, 1962.

So ordered.