829 F.2d 1121
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Frank THACKER; Marie Nowlin Thacker, Defendant-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry Lee THACKER, Defendant-Appellant.
 Nos. 86-5597, 86-5602.
 United States Court of Appeals, Fourth Circuit.
 Argued May 4, 1987.
Decided Sept. 23, 1987.
 
 Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap. James C. Turk, Chief District Judge. (CR-85-3-B)
 Gilbert K. Davis (Davis & Harris, on brief); Nathan Lavinder Adams, III (Hall, Monahan, Engle, Mahan & Mitchell, on brief), for appellants.
 Richard Wilcox Pierce, Asst. United States Attorney (John P. Alderman, United States Attorney, on brief), for appellee.
 Before WIDENER, JAMES DICKSON PHILLIPS and WILKINS, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 This appeal arises out of convictions of appellant Frank Thacker for receipt of stolen property, in violation of 18 U.S.C. Secs. 2313, 2315; of appellants Frank and Marie Thacker for possession with intent to distribute hydromorphone (dilaudid), a controlled substance, in violation of 21 U.S.C. Sec. 841(a)(1), distribution of the substance, in violation of 21 U.S.C. Sec. 841(a)(1), and interstate travel to carry on the unlawful business of dealing in controlled substances, in violation of 18 U.S.C. Sec. 1952 (the "ITAR" count); and of appellants Frank and Marie Thacker and their son, Jerry Thacker, for conspiracy to distribute dilaudid, in violation of 21 U.S.C. Sec. 846. On appeal, appellants challenge the district court's jury instructions, its admission of an allegedly prejudicial hearsay statement, an alleged violation of the Speedy Trial Act, the district court's failure to acquit Frank and Marie Thacker on the ITAR count, and the sufficiency of the evidence regarding Jerry Thacker's participation in the conspiracy. We affirm.
 
 
 2
 * James Frank Thacker, Sr., and his wife, Marie Nowlan Thacker, were indicted in No. 85-0003, for conspiracy to distribute the narcotic hydromorphone (dilaudid), from January 1982 to January 1985, for possession of dilaudid with intent to distribute and distribution on October 11, 1984, and for interstate travel to promote a drug business (the "ITAR" count). In the same indictment the Thackers' two sons, Jerry Thacker and James Frank Thacker, Jr. ("Bugs"), were charged with involvement in the drug conspiracy; Jerry Thacker was charged with possession with intent to distribute dilaudid on October 11, 1984, and Bugs was charged with a separate ITAR count. In a separate indictment, No. 85-0006, Frank Thacker, Sr. was charged with receipt of stolen property, including a bulldozer, a dump truck, and a trailer.
 
 
 3
 The government's case against the Thackers consisted of testimony of ex-dilaudid addicts and their parents and of law enforcement personnel. Phillip Stewart, who pleaded guilty in indictment 85-0006, and his common law wife Terri Belcher Stewart testified both before the grand jury and at trial. Phillip Stewart related that during his period of addiction to dilaudid he bought 95% of his pills from all four of the Thackers, Frank Sr. being his major supplier. According to Stewart, Frank, Sr. would trade dilaudid for such property as tires and batteries. If he needed pills, Stewart would drop by the Thacker residence and ask if the Thackers had any tires or coal to sell. If Thacker had pills, he would usher Stewart into the kitchen to complete the sale. In the event Frank, Sr. was not at home, Stewart would buy from one of the other family members. Terri Stewart, like her husband a former dilaudid addict, testified that she had bought pills from the Thackers, having paid Frank, Sr. at least $15,000 over the years. She testified further that she knew of at least 13 other dilaudid addicts who purchased pills from Frank Thacker. Phillip Stewart's parents testified that they paid Frank, Sr., either directly or indirectly through Phillip and Terri for dilaudid because they believed their son to be ill and in need of the pills.
 
 
 4
 Four other ex-addicts testified about their dealings with Frank and Marie Thacker. One of them, Michael Hall, testified that at one point he visited the Thacker home to buy dilaudids on a daily basis. He said that at times there would be four or five people waiting to purchase pills from Frank, Sr. Hall's wife, Cynthia, corroborated her husband's testimony and recalled meeting Terri and Phillip Stewart at the Thackers' house. Another addict, Morrison Reedy, testified that he purchased up to 75 pills at a time from the Thackers. Not only Frank, Sr., but Marie, Jerry, and Bugs also sold to Reedy. A former girlfriend testified tbat she had accompanied Reedy to the Thacker home.
 
 
 5
 Reedy made a controlled buy of two dilaudids from Frank Thacker in June 1983. In a resulting warrant search, agents found drug paraphernalia in the Thacker house. When the agents went to a club the Thackers owned, Frank blocked their entry and shouted for Marie "to get rid of it." Trooper G.D. Gravely, who testified at trial, took a weapon from Frank, Sr. and ran into the bathroom in time to hear the toilet flush. He saw an empty pill bottle in the trash can.
 
 
 6
 On October 10, 1984, Terri Stewart, carrying a hidden recorder, negotiated with Marie Thacker for the purchase of pills. Stewart left the Thacker residence without any pills but returned the next day, again carrying a recorder, and negotiated with Frank, Sr. in the kitchen. During the negotiation, as Stewart had begun counting money, Jerry Thacker entered the kitchen. When Stewart questioned Frank about the total amount of money owed and tried to multiply the number of pills by the asking price, Jerry computed mentally and orally and informed Stewart of the amount due. Stewart then drove Jerry to a store. En route, Jerry stated that he had bought eight pills from his father at the same price Stewart did, a price established as the retail price. After the October 11 transaction, Frank and Marie Thacker went with Phillip Stewart to Detroit purportedly for the purpose of purchasing dilaudid. This was the travel that formed the basis of the ITAR count.
 
 
 7
 In defending against the drug charges, the Thackers testified that they, as well as many of the government witnesses, were addicted to dilaudid. According to them, it is common for dilaudid addicts to "cover" for each other when any particular user runs short on the drug. That is, they all reciprocate the favor of keeping each other supplied. Thus, the Thackers argue that the various sales recounted by witnesses were not pursuant to a conspiracy to distribute dilaudid but were separable, impromptu transactions. The Thackers defended against the charges arising from the October 11, 1984, transaction with Terri Stewart by arguing that they were entrapped into selling the drug on that occasion. According to the Thackers, they only sold to Terri Stewart on October 11, 1985, because they believed a fellow addict, Phillip Stewart, was in desperate need of the drug.
 
 
 8
 The indictments against appellants were sealed until May 31, 1985, when the four Thackers were arrested and appeared before a magistrate. The appellants were arraigned and entered pleas of not guilty on June 13, 1985. Trial of the indictment of Frank Thacker, Sr., on the stolen equipment charges was scheduled for August 1 and 2, 1985, but no trial was then scheduled for the drug charges. Frank, Sr. 'made various pretrial motions in the stolen equipment case on July 18, which motions finally were disposed of on September 27. Meanwhile, at Frank, Sr.'s request, trial in 85-0006 was postponed until August 22 and 23. When Thacker became ill, the trial was delayed further until October 3. On October 3, Thacker requested a continuance because of a missing defense witness who had not been subpoenaed, and, upon the parties' agreement, the stolen equipment case was consolidated for trial with the drug case, which had, on September 20, been scheduled to begin on October 28. The September 20 order embodied the district court's finding that the ends of justice served by granting a continuance of the Speedy Trial Act time period in the drug case outweighed the interest of the public and the defendants in a speedy trial.
 
 
 9
 Trial began on the combined indictments on October 28 against Frank and Marie Thacker and against a co-defendant on the stolen equipment charge. Bugs and Jerry Thacker did not stand trial because they had been sent to FCI Butner for evaluation. The court declared a mistrial on November 5 after the jury reported that it was deadlocked.
 
 
 10
 A second trial proceeded on February 3 against all four of the Thackers. In that trial, the jury found Frank Thacker guilty of conspiracy, possession with intent to distribute, and distribution of dilaudid, and of the ITAR and receipt of stolen property counts; found Marie Thacker guilty of the conspiracy, possession with intent to distribute, and distribution of dilaudids, as well as of the ITAR count; and found Jerry Thacker guilty solely of conspiracy to distribute dilaudids. Frank Thacker, Jr., who does not appeal, was convicted of conspiracy to distribute dilaudids and of the ITAR count.
 
 
 11
 This appeal followed.
 
 II
 
 12
 The first set of errors assigned involves the district court's jury instructions.
 
 
 13
 Frank Thacker complains of the instruction that unexplained possession of recently stolen property may raise an inference that the possessor has knowledge that the property was stolen; he also isolates and complains about a particular part of the instructions on the stolen equipment charge in which the trial court told the jury that it "may" acquit if it had a reasonable doubt.
 
 
 14
 Frank, Marie, and Jerry Thacker argue that the instructions erroneously omitted a caveat that the testimony of a perjurer must be weighed with caution.
 
 
 15
 Finally, all three appellants contend that they were entitled to an instruction on simple possession of a controlled substance, a lesser-included offense of possession with intent to distribute.
 
 We consider these in order
 
 16
 * The trial court told the jury that to be guilty of receipt of stolen property, "a defendant must know that the motor vehicle, goods, wares and merchandise had been stolen." In the part of the charge contested by Frank, Sr., the court also instructed:
 
 
 17
 In connection with these counts, the Court further charges the jury that possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of all the surrounding circumstances shown by the evidence in the case, that the person in possession knew that the property had been stolen; and possession of property recently stolen, if not satisfactorily explained, is also ordinarily a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances, that the person in possession knew it was stolen property. Ordinarily, the same inferences may reasonably be drawn from a false explanation of possession of recently stolen property. The term, "recently," is a relative term and has no fixed, exact meaning. Whether property may be considered recently stolen depends upon the nature of the property and all of the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from unexplained possession of the property....
 
 
 18
 ....
 
 
 19
 In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise of constitutional rights, the accused need not take the witness stand and testify. There may be opportunities to explain possession by showing other facts and circumstances independent of the testimony of the Defendant.
 
 
 20
 You are to always bear in mind that the law never imposes upon a Defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.
 
 
 21
 It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently stolen property. If any possession the accused may have had of recently stolen property is consistent with innocence, or if you entertain a reasonable doubt of guilt, you may acquit the accused on these counts.
 
 
 22
 Frank Thacker argues that this instruction improperly shifts to him the burden of "explaining" his possession. The instruction, however, is nearly identical to the one approved by the Supreme Court in Barnes v. United States, 412 U.S. 837, 840 n.3 (1973). In Barnes, the Court found acceptable use of the phrases "unexplained possession," "unless such possession is explained," and "in considering whether possession ... has been satisfactorily explained." Moreover, this court has upheld the reasonableness of the inference of guilty knowledge from the unexplained possession of recently stolen property. See United States v. Kolakowski, 314 F.2d 699 (4th Cir., 1963); Battaqlia v. United States, 205 F.2d 824 (4th Cir. 1953): see also United States v. Lonq, 538 F.2d 580 (4th Cir. 1976) (inference of theft from possession of recently stolen property). Furthermore, the district court repeatedly reminded the jury of the prosecution's burden of proof, as well as of the fact that the accused had no duty to testify or present evidence on his own behalf.
 
 
 23
 There was no error in this portion of the instructions.
 
 
 24
 Frank Thacker more specifically complains of that portion of the instruction that, "if you entertain a reasonable doubt of guilty, you may acquit the accused on those counts." According to Thacker, this instruction misinforms the jury that even if it has a reasonable doubt, acquittal is only a discretionary act.
 
 
 25
 Any possibility that this instruction so misinformed the jury is annulled by the context. Immediately before this portion of the instruction was given, the court admonished that
 
 
 26
 [i]t is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently stolen property.
 
 
 27
 Then followed the portion challenged, which in full context ran: "[i]f any possession the accused may have had of recently stolen property is consistent with innocence, or if you entertain a reasonable doubt of guilt, you may acquit the accused on these counts." In total context, it is clear that the instruction challenged was given for the defendant's benefit, to emphasize that the inference of guilty knowledge is only permissive, not mandatory. Taking the instructions as a whole, we therefore find no reversible error.
 
 B
 
 28
 The appellants requested, but were denied, the following instruction:
 
 
 29
 The testimony of an admitted perjuror should always be considered with caution and weighed with great care.
 
 
 30
 They contend on appeal that such an instruction was required, once requested, in relation to the testimony of Lee Mann, Terri Stewart, and Phillip Stewart.
 
 
 31
 There was no error in the district court's refusal to give this instruction, for these witnesses simply had not been found by any court to be guilty of perjury. At best, the witnesses had made statements inconsistent with those made during the retrial of the case, but such inconsistencies do not compel a perjuror instruction. See United States v. Allen, 579 F.2d 531 (9th Cir. 1978). The court did tell the jury that "inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause the jury to discredit such testimony." The court further instructed that "[a] witness may be discredited ... by evidence that at some other time the witness had said or done something, or has failed to say or do something which is inconsistent with the witness's present testimony." These instructions carefully and sufficiently reflected the evidence the jury had before it to judge credibility. See United States v. Evanchik, 413 F.2d 950, 954 (2d Cir. 1969) (court properly instructs the jury when i t charges that a witness may be discredited by evidence that he previously said something inconsistent with his present testimony).
 
 C
 
 32
 Appellants also challenge the district court's refusal to give an instruction that they could be found guilty of simple possession of a controlled substance on October 11, 1984, in violation of 21 U.S.C. Sec. 844, rather than of possession of a controlled substance with intent to distribute. They argue that if the jury believed their defense that they were entrapped into distributing dilaudid on October 11, 1984, then it could acquit them of possession with intent to distribute and of distribution but find them guilty of mere possession, which they did not deny.
 
 Fed. R. Crim. P. 31(c) provides:
 
 33
 The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.
 
 
 34
 A lesser-included offense instruction may benefit both prosecution and defense, as it provides the jury a "middle ground" between entirely acquitting a defendant and convicting him of a more serious crime. See Olais-Castro v. United States, 416 F.2d 1155, 1157 n.2 (9th Cir. 1969) (citing Stevenson v. United States, 162 U.S. 313). A defendant wants such an instruction because without the "middle ground" option, the jury is more likely to convict "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense," Keeble v. United States, 412 U.S. 205, 212-13 (1973).
 
 
 35
 Entitlement to such an instruction depends upon whether, in light of all the evidence, a jury rationally could find a defendant guilty of the lesser-included offense while declining to find him guilty of the greater offense charged. See, e. g. Keeble, 412 U.S. at 208; United States v. Blankenship, 548 F.2d 1118, 1120 (4th Cir. 1976). Typically, the possibility arises in cases where there is a genuine dispute over an element of the greater offense which serves to differentiate it from the lesser-included offense of which it is not an element. see, e.g., Sansone v. United States, 380 U.S. 343 (1965). For example, in cases such as the instant one where possession with intent to distribute narcotics is charged there may be a very close question whether any possession found was with intent to distribute or purely for personal consumption. See, e.g., United States v. Levy, 703 F.2d 791 (4th Cir. 1983).
 
 
 36
 This case presents a slight variation on this more typical pattern. Here the differentiating issue is not as to an element of the greater offense charged but to an affirmative defense--entrapment going solely to such an element. Though there is this difference, the controlling principle is the same. A lesser-included offense instruction was required only if a jury rationally could have found that the Thackers were entrapped into having the intent and distributing dilaudid which, until their entrapment, they concededly possessed only for personal consumption.
 
 
 37
 We find no error in declining the instruction here. On the total evidence we agree with the district court that it was not warranted. It is true that the court gave the Thackers the benefit of an entrapment instruction going only to the elements of intention and distribution; but we think the further benefit of a lesser-included instruction based upon the possibility that the jury might have found entrapment was not warranted. While there was some evidence of entrapment, it was so meager that we cannot find it reversible error to refuse a lesser-included instruction based upon the possibility. Given the strong evidence of the Thackers' involvement in distribution on other occasions than the October 'sale in issue, we believe the court's instruction on entrapment proceeded more from an abundance of caution than from any assessment that the evidence of entrapment was sufficiently substantiated to support on a rational basis its acceptance by the jury. Accordingly, we agree with the district court's implicit assessment that on the evidence as a whole a lesser-included offense instruction was not warranted. See United States v. Klugman, 506 F.2d 1378, 1380 (8th Cir. 1974).
 
 III
 
 38
 Appellants next contend that the trial court erred in admitting Trooper G.D. Gravely's response to the question on redirect examination whether Gravely had received any complaints that Frank and Marie Thacker were selling dilaudids. On crossexamination, defense counsel had asked Gravely whether law enforcement officers had heard that the Thacker boys, Jerry and Bugs, were users of drugs. Defense counsel reminded Gravely of the narrow question asked after the witness tried to expand his answer to include "all the Thackers." The disputed question on redirect followed.
 
 
 39
 The basis upon which appellants complain of this evidence is the rule against hearsay, Fed. R. Evid. 802. At oral argument, the parties and the panel also discussed the propriety of admitting this evidence as a "bad act" by the Thackers. See Fed. R. Evid. 404(b). Whether considered on one or the other basis, we think admission of the testimony was, in any event, harmless if technically erroneous. The Thackers emphasize that Gravely's response tends to undermine the entrapment defense, as it suggests that they were predisposed to sell dilaudid. There was, however, in addition to Gravely's statement, other evidence in the form of tape recordings and testimony of addicts and parents of addicts that the Thackers had sold dilaudid before the October 11 sale into which they claim to have been entrapped. That persons might have "complained" to officers about the Thackers' sales adds little if anything to the more specific testimony properly admitted at trial linking the Thackers to a continuing distribution enterprise.
 
 IV
 
 40
 Appellants next urge that the trial court erred in rejecting their claim that the Speedy Trial Act, 18 U.S.C. Sec. 3161(c)(1), required dismissal of the indictment in case 85-0003. The Act requires that trial in a case commence within seventy days of the later of the filing of an indictment or a defendant's initial appearance before a judicial officer, 18 U.S.C. Sec. 3161(c)(1), and then excludes particular periods of time from the calculation, id. Sec. 3161(h).
 
 
 41
 Appellants first appeared before a magistrate on the date of their arrest, May 31, 1985, a date that followed indictment. Trial commenced on October 28, 1985. The total number of days elapsed during this period is 150. See Fed. R. Crim. P. 45(a) (in computing time, the day from which the period begins to run is not included, but the last day of the period is included unless it is a Saturday, Sunday, or legal holiday). Of that 150, a significant number are excluded, primarily because, under 18 U.S.C. Sec. 3161(h)(7), the seventy days does not run on any one defendant until it has run as to each co-defendant. See United States v. Rush, 738 F.2d 497, 503. All co-defendants of Frank Thacker in the drug case are subject to the exclusion from the seventy day requirement of any period of delay attributable to proceedings against Frank on the stolen equipment charge and thus excludable as to him in the drug case. See 18 U.S.C. Sec. 3161(h)(1)(A) and (D) (exclusion of period of delay attributable to any proceedings or other trial against a defendant); United States v. Lopez-Espindola, 632 F.2d 107, 109-10 (9th Cir. 1980).
 
 
 42
 The first excluded day is January 13, the date of arraignment of all defendants. United States v. Keefer, 799 F.2d 1115, 1122 (6th Cir. 1986). Next, seventy-one days are excluded, attributable to motions Frank Thacker filed in the stolen equipment case on July 18. The court did not dispose of these motions until September 27. 18 U.S.C. Sec. 3161(h)(1)(F) excludes from calculation of the Speedy Trial Act time in 85-0006 the delay arising from these motions, and under 18 U.S.C. Sec. 3161(h)(1)(A) and (D) the same time period is excluded for Frank in the drug case if it caused delay in the latter proceeding. We believe that the delay in 85-0006 led to concomitant delay in 85-0003. It further is notable that Frank himself caused delay in the stolen equipment case even beyond that attributable to the motions. Trial in that case was set to begin on August 2 but was postponed at Frank's request because of vacation. He sought postponement again because of illness on August 22, and because of failure to subpoena material witnesses at the time the trial had been rescheduled again on October 3.
 
 
 43
 Overlapping in part these delays in Frank's stolen equipment trial is the period from September 20 to the beginning of trial on October 28; on September 20, the district court had entered an order in 85-0003 finding that the ends of justice served by the granting of a continuance of trial in that case outweighed the interest of the public and the defendants in a speedy trial. 18 U.S.C. Sec. 3161(h)(8)(A) and (B)(iv) excludes any delay resulting from such a continuance, as long as the court makes findings, as the district court did here, supporting its "ends of justice" determination. The district court's order specified that a denial of a continuance would deny counsel for both sides reasonable time to prepare their cases, and the order also expressly recognized the related delay, due to illness of Frank Thacker, in the stolen equipment trial. This last excludable delay of at least 31 additional days, added to the one day of arraignment and the number of non-overlapping days during which motions were pending in the equipment case, brings the total number of excludable days to 96. Subtracted from the 150 actual days that elapsed between arraignment and trial, the excluded periods reduce the total elapsed time to a number well within the seventy day Speedy Trial Act limit, even without consideration of the relevance of delays in the stolen equipment case to accommodate Frank Thacker's vacation, illness, or failure to subpoena witnesses.
 
 
 44
 Because of the number of days remaining after subtraction of the excluded period, we also need not consider the various alternative calculations offered by the parties both on appeal and before the district court. We thus express no opinion as to the effect on the running of the Speedy Trial Act in 850003 of the incarceration of Jerry Thacker in Kentucky from July 11 to August 8 or of the commitment of Jerry and Bugs Thacker to the facility at Butner, North Carolina, on September 13.
 
 V.
 
 45
 Appellants Frank and Marie Thacker also contend that the district court in the first trial committed error in failing to grant a judgment of acquittal as to the ITAR count. They had made a motion for acquittal on that count at the conclusion of the government's evidence, arguing that there was insufficient evidence that they went to Detroit to purchase drugs. The district court at that time took the motion under advisement and, without objection by the appellants, had them present their case to the jury. The jury reported that it was hung and was discharged on November 5, 1985. On January 29, 1986, appellants made a post-trial motion for acquittal. There is nothing of record to establish that the district court in the first trial ever ruled on the motion, but it appears from the circumstances that, in effect, the court denied it. Cf. United States v. Brown, 456 F.2d 293, 294 (2d Cir. 1972) (absent an explicit demand that court rule immediately on a motion made at the close of government's case, the situation is treated as if the court denied the motion); United States v. Godel, 361 F.2d 21, 24 (4th Cir. 1966) (although trial court "reserved" decision on motion for acquittal, determined from context that motion was denied). The motion was more explicitly denied by the district judge who conducted the retrial.
 
 
 46
 Although it was technically improper for the district court in the first trial to defer ruling upon the motion for acquittal when it originally was made, see Fed. R. Crim. P. 29(a) and (b); see also Moore v. United States, 375 F.2d 877, 878-80 (8th Cir. 1967); United States v. House, 551 F.2d 756, 757-58 (8th Cir. 1977), the point raised on appeal is not that the ruling on the motion was improperly deferred but rather that it ultimately was improperly denied. We believe that the district court on the retrial correctly declined to reconsider the motion, which appellants had renewed on January 29, 1986, because appellants had not complied with the requirement of Fed. R. Crim. P. 29(c) that such motions be made or renewed within seven days after discharge of the jury or within such further time as the court may fix during the seven-day period. Appellants refer to nothing in the record demonstrating that the district court extended the seven-day period, and we thus find any right to reconsideration waived.
 
 VI
 
 47
 Appellant Jerry Thacker seeks reversal of his conviction on the conspiracy charge because of the insufficiency of the evidence against him. We find no merit in this contention.
 
 
 48
 Although not overwhelming, the evidence sufficiently supports an inference that Jerry Thacker agreed to sell dilaudid with full knowledge that those with whom he conspired intended to effectuate a criminal purpose. Most significant is his participation in the controlled October 11 purchase, which took place in Frank and Marie Thackers' kitchen. Although the transaction did begin without his presence, Jerry Thacker entered the kitchen while the sale progressed, without any apparent objection by his father, and helped multiply the number of pill sold times the price per pill. While Jerry was present in the kitchen, Frank Thacker told the informant that he had just obtained 20 dilaudid from a source. After the sale, Jerry told the informant that if she "needed" him, she knew where to find him. His presence, knowledge of the sale, and aid in its completion are sufficient to support an inference of his participation in the conspiracy. In addition, there was testimony from three addicts that Jerry Thacker was a "source" of dilaudid. An inference of his participation in the conspiracy thus is sufficiently supported notwithstanding his own testimony that he had to buy pills at retail from his father, that Frank, Sr did not trust his son not to use pills left in his possession, or that Jerry Thacker tried to undercut his father n price. Jerry Thacker's conspiracy conviction is therefore supported by more evidence than that of his mere relationship to Frank, Marie, and Bugs Thacker and by more that his mere presence at the scende of the October 11 sale.
 
 
 49
 AFFIRMED.