Willie E. **PENDERGRAST**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21031.

United States Court of Appeals
District of Columbia Circuit.

Argued April 11, 1968.

Decided Jan. 31, 1969.

Certiorari Denied May 26, 1969.
See 89 S.Ct. 1782.

778

Mr. Milton A. Kallis, Washington, D. C., (appointed by this court) for appellant.

Mr. William G. Reynolds, Jr., Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Shortly after midnight on a February morning in 1966, Grady Johnson and Henry Ussery, while walking along a sidewalk, were attacked by several men. A wallet, a watch and a small sum of money were taken from Johnson, and a watch and a penknife from Ussery. Within a few minutes, police officers, responding to a reported shooting in the same block, arrived at the scene. Soon gathered there, too, were a number of spectators, among whom our appellant was standing.

Ussery, bruised and bleeding about his face, informed Officers Arthur G. Delaney and Rudolph Scipio of the attack, and pointed to appellant—a stranger to him—as one of the robbers. Though somewhat excited, and admittedly having been drinking prior to the incident,[1] Us-

1. The evidence discloses that Ussery and Johnson had consumed a pint of whiskey and "[e]xactly two beers" during the evening, but does not imply that Ussery

sery insisted that he was positive in his identification.[2]

Officer Scipio then approached appellant and inquired as to what he was doing in the area. Appellant replied that he had just left a party, and was taking a walk to get some fresh air. The officer then informed appellant of Ussery's accusation, which appellant denied, and proceeded to arrest him. A concomitant search uncovered on appellant's person the watch taken from Johnson, and the watch and penknife stolen from Ussery.[3]

Indicted in two counts of robbery,[4] appellant moved unsuccessfully, on Fourth Amendment grounds, to suppress the two watches and the penknife. In addition to Ussery's in-court identification of appellant as one of the assailants, the Government introduced the watches and penknife into evidence. In due course, the trial judge instructed the jury that from appellant's possession of those items, if not satisfactorily explained, an inference of guilt might be drawn. The jury, rejecting appellant's testimony that he had found the articles in the street,[5] convicted on both counts.

This appeal brings before us appellant's several contentions, together with an issue which we have raised on our own. These we discuss, in ensuing parts of this opinion, with a view to determining whether the proceedings in the District Court were infected with prejudicial error. Concluding that they were not, we affirm.

I

Appellant's motion to suppress the introduction of the watches and penknife came on for hearing prior to trial, and his counsel made known his desire to testify at the hearing without impairing his Fifth Amendment rights at trial. The judge [6] ruled, however, that "if he says anything that might incriminate him here, it can be used in the trial of the case. * * *"[7] Confronted with that possibility, appellant elected not to testify on the motion, though he did take the witness stand at the trial.

 This ruling occurred prior to our decision in Bailey v. United States [8] and before the Supreme Court decided Simmons v. United States.[9] *Simmons* held that a defendant's testimony in support of a motion to suppress evidence on Fourth Amendment grounds cannot over objection be used against him on the is-

---

was intoxicated. See the text *infra* at note 51.

2. Johnson, also beaten and injured in the attack, was unable to identify any of the assailants.

3. Appellant claimed that he found the two watches and the penknife on the street while taking his walk. The record is devoid of evidence to show what happened to the wallet and money taken from Johnson.

4. D.C.Code § 22–2901 (1967 ed.).

5. See note 3, *supra*.

6. Not the judge who presided at the trial.

7. The ruling, and the colloquy from which it emanated, were as follows:

[FIRST DEFENSE ATTORNEY: If your Honor please, I would like to call the defendant to testify for the limited purpose of testifying as to the legality of his arrest.

THE COURT: He can testify to what he wants, but I am not going to confine him. He does it at his own risk.

[SECOND DEFENSE ATTORNEY]: In other words, we want to make sure, Your Honor, that he is not waiving any Fifth Amendment rights for the trial.

THE COURT: It all depends on what he says. I understand what you are going to put him on for, and, of course, counsel for the Government is limited to cross-examine on what you bring out in this motion, but if he says anything that might incriminate him here, it can be used in the trial of the case as far as this Court is concerned.

[SECOND DEFENSE ATTORNEY]: If that is the ruling of the Court, I think we are not going to call him.

8. 128 U.S.App.D.C. 354, 389 F.2d 305 (1968).

9. 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

sue of guilt at trial.[10] *Bailey* decided similarly that a defendant may testify at the suppression hearing without waiving his Fifth Amendment privilege against self-incrimination.[11] The rationale of both cases is that a defendant cannot constitutionally be compelled to surrender his Fifth Amendment protection against self-inculpation in order to safeguard his Fourth Amendment exclusion claim.[12] Quite obviously, if these principles are to be applied to the ruling in this case, there is serious question whether the conviction can stand.[13]

Appellant did not assign the ruling as error, or allude to it in brief or oral argument; rather, we discovered it upon our review of the record. We then requested counsel for appellant and the Government to file supplemental memoranda addressed to the problems potentially posed. Now, after careful consideration of these memoranda, we are convinced that these problems merit our attention.

As we have stated, *Simmons* and *Bailey* were announced after appellant's trial was completed. Without benefit of the *Simmons-Bailey* constitutional interpretations, the District Court's action on appellant's request for testimonial immunization was squarely supported by the overwhelming weight of prior federal judicial authority. Not only in this circuit,[14] but in fully half of the remaining circuits as well,[15] the admissibility at trial of the accused's testimony on an unsuccessful motion to suppress was the accepted rule. And viewing the situation realistically, we recognize the possibility that the combination of events dissuaded appellant from raising the issue on this appeal.[16]

It goes without saying that ordinarily we do not pass on issues which the parties have not tendered for decision.[17] But we are also sensitive to the fact that we sit "not only to correct error in the judgment under review but to make such disposition of the case

---

10. *Id.* at 389–94, 88 S.Ct. 967.

11. 128 U.S.App.D.C. at 359–360, 389 F.2d at 310–311.

12. Simmons v. United States, *supra* note 9, 390 U.S. at 394, 88 S.Ct. 967; Bailey v. United States, *supra* note 8, 128 U.S.App.D.C. at 360, 389 F.2d at 311.

13. We are not certain as to the reach of the hearing judge's statement that anything incriminating appellant might have said at the suppression hearing "can be used in the trial of the case." Clearly the Government could not properly have used appellant's testimony affirmatively at the trial. Simmons v. United States, *supra* note 9, 390 U.S. at 394, 88 S.Ct. 967; Bailey v. United States, *supra* note 8, 128 U.S.App.D.C. at 360, 389 F.2d at 311. The judge's admonition could, however, have been understood to carry that connotation, and there is nothing to suggest that it was not so understood. Compare Harrison v. United States, 392 U.S. 219, 224–226, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). We express no opinion as to whether appellant's hearing testimony could have been used at trial for purposes of impeachment. See Proctor v. United States, 131 U.S.App.D.C. 241, 404 F.2d 819 (1968).

14. See Washington v. United States, 100 U.S.App.D.C. 99, 243 F.2d 43, cert. denied 354 U.S. 914, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957), affirming a conviction where the briefs and record squarely raised the point.

15. See United States v. Taylor, 326 F.2d 277 (4th Cir.), cert. denied 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964); Monroe v. United States, 320 F.2d 277 (5th Cir. 1963), cert. denied 375 U.S. 991, 84 S.Ct. 630, 11 L.Ed.2d 478 (1964); Heller v. United States, 57 F.2d 627 (7th Cir. 1932); Kaiser v. United States, 60 F.2d 410 (8th Cir. 1932); Fowler v. United States, 239 F.2d 93 (10th Cir. 1956). But see United States v. Lewis, 270 F.Supp. 807, 810 n. 1 (S.D.N.Y. 1967).

16. While our opinion in *Bailey* was released prior to the filing of appellant's opening brief on appeal, *Simmons* was not announced until later.

17. See Silber v. United States, 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); United States v. Atkinson, 297 U.S. 157, 159, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

as justice requires." [18] Additionally, "in determining what justice does require, the Court is bound to consider any change, either in fact or law, which has supervened since the judgment was entered." [19] Appellant invoked in the District Court the privilege that *Simmons* and *Bailey* subsequently made plain he was at liberty to exercise. And if the applicability of those decisions to appellant's episode is not decided while this case is still in the line of direct appeal, appellant may be foreclosed from urging the point at all.[20] With substantial rights hanging in the balance, elemental justice requires our determination whether appellant can reap any benefit from the *Simmons-Bailey* holdings.[21]

At the outset, we note that it was the court's ruling that apparently caused appellant to abandon his original plan to testify at the suppression hearing.[22] At the very least, the Government has not shown that appellant's change of mind was not a result of the court's statement on potential use of his hearing testimony at trial.[23] And it is evident that there was error of constitutional dimension if appellant was hurt by that ruling.[24]

The Supreme Court did not in *Simmons*, nor did we in *Bailey*, indicate any view as to whether the doctrine they proclaimed should be applied in retrospect. Retroactivity of newly-pronounced constitutional rules is a matter to which the Constitution does not speak; [25] a problem, too, not automatically resolved by the constitutional provision upon which the new rule is based.[26] The parties have treated the situation here as one calling for a declaration that the *Simmons-Bailey* rule is completely retroactive or that it is not retroactive at all. We think, however, that the problem, properly defined, does not confine the decisional choice to these two alternatives.

Certainly *Simmons* and *Bailey* do not possess the characteristic of "pure prospectivity" [27]—limitation of the constitutional canon they announced to future cases, even to the exclusion of Simmons and Bailey themselves [28]—since the litigants in each of those cases enjoyed all that the canon could confer.[29]

18. Patterson v. Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 578, 79 L.Ed. 1082 (1935). See also Wright v. United States, 131 U.S.App.D.C. 279, 404 F.2d 1256 (1968); In re Elmore 127 U.S. App.D.C. 176, 178, 382 F.2d 125, 127 (1967).

19. Patterson v. Alabama, *supra* note 18, 294 U.S. at 607, 55 S.Ct. at 578. Compare 28 U.S.C. § 2106 (1964).

20. See note 32, *infra*, and accompanying text.

21. See Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L. Ed. 1557 (1946); Oliver v. United States, 118 U.S.App.D.C. 302, 306, 335 F. 2d 724, 728 (1964); Adams v. United States, 375 F.2d 635, 637 (10th Cir. 1967).

22. Compare Simmons v. United States, *supra* note 9, 390 U.S. at 392–393, 88 S. Ct. 967.

23. See Harrison v. United States, *supra* note 13, 392 U.S. at 224–226, 88 S.Ct. 2008.

24. Simmons v. United States, *supra* note 9, 390 U.S. at 394, 88 S.Ct. 967; Bailey v. United States, *supra* note 8, 128 U.S. App.D.C. at 360, 389 F.2d at 311.

25. Tehan v. United States ex rel. Shott, 382 U.S. 406, 410, 86 S.Ct. 459, 15 L.Ed. 2d 453 (1965); Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1964).

26. Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

27. Tehan v. United States ex rel. Shott, *supra* note 25, 382 U.S. at 409 n. 3, 86 S.Ct. 459; Linkletter v. Walker, *supra* note 25, 381 U.S. at 622, 85 S.Ct. 1731.

28. See England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 422, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Linkletter v. Walker, *supra* note 25, 381 U.S. at 622, 85 S.Ct. 1731; United States v. Walker, 323 F.2d 11, 13 (5th Cir. 1963).

29. In *Simmons*, there was a reversal grounded on the new rule. In *Bailey*, only the lack of prejudice to appellant forestalled reversal. Compare Tehan v. United States ex rel. Shott, *supra* note 25, 382 U.S. at 409 n. 3, 86 S.Ct. 459; Linkletter v. Walker, *supra* note 25, 381 U.S. at 622, 85 S.Ct. 1731.

Nor is the question before us whether *Simmons* and *Bailey* enjoy total retroactivity,[30] since appellant's conviction is not yet final.[31] New constitutional adjudications have frequently been applied to cases pending on direct appeal at the time of the adjudication though their benefit would not be extended to collateral proceedings.[32] There occurs to us but one possible reason, next to be discussed, why *Simmons* and *Bailey* might not be available to appellant.

■ Some principles derived by constitutional construction are of such nature that their operation has been judicially restricted to offending activities occurring after they are pronounced.[33] In terms of this litigation, the question would be whether the *Simmons-Bailey* doctrine should be similarly limited to future legal proceedings of an infringing character. This is a question, however, as to which we deem it unnecessary to express a view. We have examined the record to ascertain whether, in the light of the *Simmons-Bailey* standard, appellant could have been prejudiced in consequence of the fact that he did not testify at the pretrial hearing of his motion to suppress, and we are satisfied that he was not. In this fashion we discharge our responsibility under *Simmons* and *Bailey* without venturing an opinion as to whether, had he been injured, those holdings would prompt reversal of his conviction.

■ The only issue appellant raised by his motion to suppress was whether Officer Scipio had probable cause to arrest him, and the Government's proof on probable cause was abundant.[34] But notwithstanding the pretrial ruling that the Government might introduce the watches and penknife seized from appellant, justification for arrest became the subject of repeated inquiry by defense counsel at the trial.[35] Government witnesses were extensively cross-examined in that regard and, as we have stated, appellant took the stand in his own behalf, and

30. Compare Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Eskridge v. Washington Prison Bd., 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed. 2d 1269 (1958).

31. We use the word "final" as referable to situations where "the judgment of conviction was rendered, the availability of appeal exhausted and the time for petition for certiorari elapsed or a petition for certiorari denied" before rendition of the decision pronouncing the new constitutional rule. See Tehan v. United States ex rel. Shott, *supra* note 25, 382 U.S. at 409 n. 3, 86 S.Ct. 459; Linkletter v. Walker, *supra* note 25, 381 U.S. at 622 n. 5, 85 S.Ct. 1731.

32. With Linkletter v. Walker, *supra* note 25, compare Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Wade v. Yeager, 377 F.2d 841, 845 (3rd Cir. 1967); White v. Peppersack, 352 F.2d 470, 472 n. 5 (4th Cir. 1965); Dillon v. Peters, 341 F.2d 337, 340–341 (10th Cir. 1965). And see Tehan v. United States

ex rel. Shott, *supra* note 25, 382 U.S. at 409 n. 3, 86 S.Ct. 459, with which compare O'Connor v. Ohio, 385 U.S. 92, 93, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966). See also Stovall v. Denno, 388 U.S. 293, 301, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, *supra* note 26, 384 U.S. at 732, 86 S.Ct. 1772; Linkletter v. Walker, *supra* note 25, 381 U.S. at 625–627, 85 S.Ct. 1731.

33. See Stovall v. Denno, *supra* note 32, 388 U.S. at 296, 300–301, 87 S.Ct. 1967; Johnson v. New Jersey, *supra* note 26, 384 U.S. at 721, 732–735, 86 S.Ct. 1772; Compare Wright v. United States, *supra* note 18; Borum v. United States, 133 U.S.App.D.C. 147, 409 F.2d 433 (1967).

34. The evidence on probable cause is discussed in Part II, *infra*.

35. The issue at trial was the validity of Ussery's identification of appellant as one of the robbers. Moreover, a motion to suppress which is denied by a pretrial ruling may, in appropriate circumstances, be renewed at the trial, e.g., Rouse v. United States, 123 U.S.App.D.C. 348, 349–350, 359 F.2d 1014, 1015–1016 (1966); Anderson v. United States, 122 U.S.App.D.C. 277, 279, 352 F.2d 945, 947 (1965), and appellant's motion was renewed and again denied at his trial.

elaborated the circumstances surrounding his arrest. Examination of appellant's trial testimony reveals that it was not significantly variant from the testimony of the Government's witnesses, at the suppression hearing and at the trial, insofar as it bore on the matter of probable cause. We conclude, then, as we did in *Bailey*,[36] that the error, if any, committed by the ruling associated with appellant's effort to testify at the hearing on his motion to suppress was harmless beyond a reasonable doubt.[37]

## II

■ The admissibility of the items exposed by the search hinged upon the validity of appellant's arrest.[38] This, in turn, depended upon the existence of probable cause for that arrest,[39] and as to this the evidence was substantial. Ussery reported the attack and the robberies to both police officers. Ussery's facial bruises and bleeding furnished corroboration for that report. Ussery positively identified appellant as a participant in the offenses. These were the prime factors inducing Officer Scipio to effect the arrest.

Appellant, on the other hand, points to conditions which, he contends, cast such doubt upon Ussery's accusation as to emasculate probable cause. Ussery was in the throes of excitement incidental to an upsetting experience, and had recently been drinking.[40] Ussery was a stranger to Officer Scipio, and appellant was a stranger both to the officer and to Ussery. Appellant gave an explanation for his presence on the street and, when confronted with Ussery's accusation, promptly denied complicity. With statements and circumstantial indicators on both sides of the issue of probable cause, appellant urges that the arresting officer's information could not sustain a conclusion that appellant was lying and that Ussery was telling the truth.

■ Probable cause for a warrantless arrest is the constitutional criterion by which its legality is measured.[41] And " '[t]he substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' "[42] Thus, "[w]hen the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment

36. 128 U.S.App.D.C. at 360–361, 389 F.2d at 311–312.

37. *Id.*

38. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ; Draper v. United States, 358 U.S. 307, 310–311, 314, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ; United States v. Rabinowitz, 339 U.S. 56, 60–61, 70 S.Ct. 430, 94 L.Ed. 653 (1950) ; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

39. Beck v. Ohio, *supra* note 38, 379 U.S. at 91, 85 S.Ct. 223; Draper v. United States, *supra* note 38, 358 U.S. at 310–311, 314, 79 S.Ct. 329; Bailey v. United States, *supra* note 8, 389 F.2d at 308; Keiningham v. United States, 113 U.S.App.D.C. 295, 296–297, 307 F.2d 632, 633–634 (1962), cert. denied 371 U.S. 948, 83 S.Ct. 502, 9 L.Ed.2d 497 (1963). But see Terry v. Ohio, 392 U.S. 1, 20–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for a limited exception, which is inapplicable to the case at bar.

40. But see note 51, *infra.*

41. *E.g.*, Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

42. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), quoting Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which in turn quoted McCarthy v. De Armit, 99 Pa.St. 63, 69 (1881).

"The sum total of the reams that have been written on the subject is that a peace officer may arrest without a warrant when he has reasonable grounds, in light of the circumstances of the moment as viewed through his eyes, for belief that a felony has been committed and that the person before him committed it." Bell v. United States, 102 U.S.App.D.C. 383, 388, 254 F.2d 82, 87, cert. denied 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).

of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed" by the arrestee.[43]

■■■■ This essential determination, however, is not of the actuality of guilt, but rather of its likelihood. The factual predicates for a finding of probable cause need not approach that moral certainty of guilt upon which a conviction after trial must rest, but are sufficient though only appearances that a reasonable mind could accept as grounds for believing in guilt.[44] "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."[45]

■■■■ So it is that a showing of probable cause involves considerably less than the demonstration of guilt demands.[46] The indicia of guilt need not be absolute, or even fully consistent[47]; they may leave some room for doubt, and even for error.[48] But they suffice, we repeat, when they "warrant a man of reasonable caution in the belief" of guilt.[49]

In our considered view, the events immediately preceding appellant's arrest amply possessed that capability. Ussery told the police officers that he and Johnson had been attacked, beaten and robbed. At the arresting officer's request, he supplied the salient details, and his bloody face gave credence to what he said. He pointed appellant out as one of the robbers, reiterating this identification several times and, in response to the officer's query, reaffirming his staunch belief that he was not mistaken.[50]

43. Beck v. Ohio, *supra* note 38, 379 U.S. at 96, 85 S.Ct. at 228, quoting Carroll v. United States, *supra* note 42, 267 U.S. at 162, 45 S.Ct. 280.

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." Brinegar v. United States, *supra* note 42, 338 U.S. at 176, 69 S.Ct. at 1311.

44. "The troublesome line * * * between mere suspicion and probable cause. * * *" is one that "necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances." *Id.* at 176, 69 S.Ct. at 1311.

See also Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Bailey v. United States, *supra* note 8, 389 F.2d at 308.

45. Brinegar v. United States, *supra* note 42, 338 U.S. at 175, 69 S.Ct. at 1310.

46. United States v. Ventresca, 380 U.S. 102, 107, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Draper v. United States, *supra* note 38, 358 U.S. at 311–312, 79 S.Ct. 329; Brinegar v. United States, *supra* note 42, 338 U.S. at 172–173, 69 S.Ct. 1302; Locke v. United States, 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813); Bailey v. United States, *supra* note 8, 389 F.2d at 308–309.

47. See Brown v. United States, 125 U.S. App.D.C. 43, 46, 365 F.2d 976, 979 (1966). Compare Jackson v. United States, 122 U.S.App.D.C. 324, 353 F.2d 862 (1965).

48. Brinegar v. United States, *supra* note 42, 338 U.S. at 176, quoted *supra* note 43, 69 S.Ct. 1302.

49. Carroll v. United States, *supra* note 42, 267 U.S. at 162, 45 S.Ct. at 288, quoting McCarthy v. De Armit, *supra* note 42, 99 Pa.St. at 69.

50. Johnson was not available for the officers' confirmation of Ussery's identification. Johnson had left the scene before Ussery reported the affair to the officers, and did not return until after appellant

We do not think that the circumstances to which appellant calls attention diluted Ussery's version or his identification to the point of untrustworthiness. Most victims of crime are total strangers to arresting officers as are most of the persons they arrest. It was not unnatural that Ussery manifested some excitement following a harrowing experience, or that appellant protested his innocence. And the evidence effectively dispelled Ussery's earlier drinking as a factor of moment to the decision the arresting officer was obliged to make.[51]

 We sustain the District Court's denial of the motion to suppress. This we could perhaps do on the basis of our past holdings of probable cause based on communications to arresting officers by victims of crime.[52] That we are not content to so bottom our decision here does not present a need to define the outer limits of an officer's permissible reliance on information derived from a victim,[53] as distinguished from that supplied by a third-party informant.[54] Other courts in some number have held that probable cause is established where (a) the victim of an offense (1) communicates to the arresting officer information affording credible ground for believing that the offense was committed and (2) unequivocally identifies the accused as the perpetrator, and (b) materially impeaching circumstances are lacking.[55] This appeals to us as an eminently sound proposition, and we would hardly do less than adopt it. For it would smack of hypocrisy to require police officers to be reasonable if we cannot be reasonable too.

### III

 During appellant's cross-examination, counsel for the Government twice addressed him as "Mr. Defendant."[56] The trial judge disposed of de-

had been arrested. Moreover, Johnson was unable to make an identification.

51. Notwithstanding the testimony at trial that both Ussery and Johnson had engaged in some drinking during the evening, see note 1, *supra*, both of the officers testified that they detected no sign that Ussery had been drinking. Officer Scipio's testimony, as we understand it, was that he knew that Ussery had been drinking only because Ussery had said so.

52. See Trimble v. United States, 125 U.S. App.D.C. 173, 174, 369 F.2d 950, 951 (1966); Brown v. United States, *supra* note 47, 125 U.S.App.D.C. at 46, 365 F.2d at 979; Kennedy v. United States, 122 U.S.App.D.C. 291, 292, 353 F.2d 462, 463 (1965); Payne v. United States, 111 U.S.App.D.C. 94, 96, 294 F.2d 723, 725, cert. denied 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961).

53. See Brown v. United States, *supra* note 47, 125 U.S.App.D.C. at 46, 365 F.2d at 979; Payne v. United States, *supra* note 52, 111 U.S.App.D.C. at 96 n. 1, 294 F. 2d at 725 n. 1.

54. *E.g.*, Draper v. United States, *supra* note 38, 358 U.S. at 313, 79 S.Ct. 329; Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

55. Stevens v. Warden, Maryland Penitentiary, 238 F.Supp. 334, 337 (D.Md.1965);

People v. Smith, 223 Cal.App.2d 394, 36 Cal.Rptr. 119, 126 (Cal.D.App.1963), cert. denied 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964); Grau v. Forge, 183 Ky. 521, 209 S.W. 369, 3 A.L.R. 642 (1919); People v. Alston, 49 Misc.2d 891, 268 N.Y.S.2d 892, 893 (Nassau County Ct. 1966); Bushardt v. United Inv. Co., 121 S.C. 324, 113 S.E. 637, 641, 35 A.L.R. 637 (1922); Oliver v. State, 414 S.W.2d 679, 681 (Tex.Cr.App.1967).

56. The incident now discussed appears in the record as follows:

BY [GOVERNMENT COUNSEL]:
Q Mr. Defendant, you were living at 1246 Eye Street, Northeast?
[DEFENSE COUNSEL]: His name is Mr. Pendergrast, Mr. Prosecutor.
THE COURT: Wait just a moment. If you have any comments direct them to the Court. It is perfectly permissible to the counsel to refer to the defendant as "Mr. Defendant" or by his proper name.
[GOVERNMENT COUNSEL]: May I proceed?
THE COURT: Yes.
BY [GOVERNMENT COUNSEL]:
Q Mr. Defendant, you were living at 1246 Eye Street, Northeast, is that right?
A Yes, sir.

fense counsel's protest [57] with the observation that "[i]t is perfectly permissible to the counsel to refer to the defendant as 'Mr. Defendant' or by his proper name." We deem that view highly questionable.

In Armstead v. United States,[58] after the accused had been referred to as "Mr. Armstead" on cross-examination, the trial judge informed the prosecuting attorney not to address defendants as "Mister," adding that "[w]e don't do that in this courtroom." Later, expressing a desire "to explain my remark," the judge added that "witnesses and counsel should be addressed as Mister or Mrs. or Miss, as the case may be, but not the defendant." We commented, however, that "[i]n spite of this effort to 'explain' we find the utterances inexplicable." [59] We elucidated:

> When a defendant takes the stand he is a witness; he is entitled to the same form of address, the same courtesies and consideration as all others involved in the proceeding. The presumption of innocence, apart from other factors, requires no less than that nothing be permitted to trench on that presumption.[60]

■■■■■ These considerations are not promoted by use of the salutation "Mr. Defendant." That quaint mixture of deference with a characterization of the accused's defensive role is not likely to maintain before the jury a proper image of one presumed innocent until guilt is established beyond reasonable doubt.[61] The episode thus gives us concern, but on the record the probability of prejudice is too remote to warrant reversal.

## IV

■■■ Conflicting evidence at the trial offered the jury a choice between the divergent theories of the prosecution and the defense as to how appellant obtained possession of the two watches and the penknife that were uncovered in the search. Ussery identified appellant as the person who took the penknife and one of the watches from him. Appellant testified that he found all three items in the street. These clashing versions, without more, presented a question of fact for the jury on a point that went to the very essence of the case.

The Government, however, did not leave the jury confined to a selection from these two testimonial presentations. It obtained the court's approbation of an instruction to the effect that appellant's exclusive possession of property recently stolen from the robbery victims afforded the basis for a permissible inference that he was one of the robbers

---

57. We note from the record that, despite this protest, appellant's trial counsel, who is not his counsel on appeal, referred to appellant several times as "Willie," and on at least one occasion referred to the prosecuting attorney as "Mr. Prosecutor." See note 56, *supra*. For reasons identified in the text, we frown upon these techniques in similar degree as upon that of which appellant complains.

58. 121 U.S.App.D.C. 22, 347 F.2d 806 (1965).

59. *Id.* at 23, 347 F.2d at 807.

60. *Id.* at 23, 347 F.2d at 807. In a separate opinion concurred in unanimously, Judge Edgerton added:
"It seems to us that by putting the defendant in a different category from other witnesses, and forbidding the prosecutor to address him as Mr. Armstead, the District Judge encroached on the jury's func-

tion in a way which cannot be reconciled with the fundamental principle that defendants are presumed to be innocent until they are proved guilty beyond a reasonable doubt. Even if he had already been convicted, forbidding the prosecutor to address him as Mister would have been inappropriate. In their dealings with criminals, trial judges represent society. If society's representatives needlessly degrade or humiliate a criminal they tend to make him more hostile to society, thereby reducing the chance of rehabilitation and increasing the chance of recidivism." *Id.* at 23–24, 347 F.2d at 807–808. And see Hamilton v. Alabama, 376 U.S. 650, 84 S.Ct. 982, 11 L.Ed.2d 979 (1964), rev'g Ex parte Hamilton, 275 Ala. 574, 156 So.2d 926 (1963).

61. We speak with reference to salutations, and not to ordinary descriptive references to "the defendant[s]."

unless that possession was satisfactorily explained by the evidence.

Of this instruction appellant strenuously complains. The availability of Ussery's testimony should have precluded any use of the inference, appellant contends, since Ussery, as the Government's witness, professed to know all facts material on the question of how appellant came into possession of the articles. And on the premise that inferences unfavorable to an accused may be used only where he has exclusive knowledge of the relevant facts, appellant claims that where, as here, the Government has eyewitness testimony regarding the accused's acquisition of recently stolen property which directly conflicts with explanatory testimony produced by the defense, the jury cannot resort to the inference.

We find this argument unpersuasive. We are dealing with an inference of ancient vintage [62] to which we, in common with a host of other courts,[63] have extended operation in trials for offenses of which the taking of property is an essential element.[64] The inference is indulged only where the accused is found in exclusive possession [65] of property recently stolen [66] and the possession is not otherwise explained.[67] The inference is then permitted because its factual prerequisites, if competently established, support a logical deduction that the possession of the stolen property could have been acquired only by the possessor's theft of that property.[68] To so

62. 1 J. Wigmore, Evidence § 152 (3d ed. 1940).

63. See the cases collected in 1 J. Wigmore, Evidence § 153 (3d ed.1940).

64. *Larceny:* Wood v. United States, 120 U.S.App.D.C. 163, 344 F.2d 548 (1965); McAbee v. United States, 111 U.S.App. D.C. 74, 294 F.2d 703, cert. denied 368 U.S. 961, 82 S.Ct. 406, 7 L.Ed.2d 392 (1961); Gilbert v. United States, 94 U.S.App.D.C. 321, 215 F.2d 334 (1954); Wright v. United States, 89 U.S.App.D.C. 70, 189 F.2d 699 (1951); Edwards v. United States, 78 U.S.App.D.C. 226, 139 F.2d 365 (1943), cert. denied 321 U.S. 769, 64 S.Ct. 523, 88 L.Ed. 1064 (1944); Tractenberg v. United States, 53 U.S. App.D.C. 396, 293 F. 476 (1923). See also Rivera v. United States, 124 U.S. App.D.C. 99, 361 F.2d 553, cert denied 385 U.S. 938, 87 S.Ct. 303, 17 L.Ed.2d 217 (1966).

*Housebreaking:* Wood v. United States, McAbee v. United States, Wright v. United States, Edwards v. United States, all *supra.* See also Rivera v. United States, *supra.*

*Robbery:* Robertson v. United States, 124 U.S.App.D.C. 309, 364 F.2d 702 (1966). See also Edwards v. United States, *supra,* 78 U.S.App.D.C. at 229, 139 F.2d at 367.

*Unauthorized use of a motor vehicle:* Scott v. United States, 125 U.S.App.D.C. 138, 369 F.2d 183 (1966); Smith v. United States, 123 U.S.App.D.C. 259, 359 F. 2d 243 (1966); McKnight v. United States, 114 U.S.App.D.C. 40, 309 F.2d 660 (1962); Gilbert v. United States,

*supra,* 94 U.S.App.D.C. at 323, 215 F.2d at 336; Epps v. United States, 81 U.S. App.D.C. 244, 157 F.2d 11 (1946).

*Interstate transportation of stolen motor vehicle:* Scott v. United States, *supra;* Smith v. United States, 118 U.S. App.D.C. 235, 335 F.2d 270 (1964); McKnight v. United States, *supra;* Bray v. United States, 113 U.S.App.D.C. 136, 306 F.2d 743 (1962). But see Travers v. United States, 118 U.S.App.D.C. 276, 335 F.2d 698 (1964).

65. See Rivera v. United States, *supra* note 64, 124 U.S.App.D.C. at 101–102, 361 F. 2d at 555–556 (dissenting opinion); Goodwin v. United States, 121 U.S.App. D.C. 9, 11, 347 F.2d 793, 795, cert. denied Vaughn v. United States, 382 U.S. 855, 86 S.Ct. 107, 15 L.Ed.2d 93 (1965); Travers v. United States, *supra* note 64, 118 U.S.App.D.C. at 278–279, 335 F.2d at 700–701.

66. "[T]he longer the interval [between theft and discovery of possession], the weaker the inference." Travers v. United States, *supra* note 64, 118 U.S.App.D.C. at 280, 335 F.2d at 702.

67. See Robertson v. United States, *supra* note 64, 124 U.S.App.D.C. at 311, 364 F.2d at 704; Smith v. United States, *supra* note 64, 123 U.S.App.D.C. at 260, 359 F.2d at 244.

68. Travers v. United States, *supra* note 64, 118 U.S.App.D.C. at 279, 335 F.2d at 701; Battaglia v. United States, 205 F.2d 824, 827 (4th Cir. 1953); 1 J. Wigmore, Evidence §§ 152, 153 (3d ed.1940).

infer "is but to accord to the evidence, if unexplained, its natural probative force." [69]

Thus, upon analysis, this inference appears simply as a result which the jury is free to reach on the basis of the circumstantial evidence which authorizes the inference. The decisions do not seem to suggest, nor would logic seem to dictate, that its operation is affected by the availability of direct testimonial evidence bearing on the theft. Appellant confesses his inability to produce authority, and we have found none, to support the view that the inference is a secondary type of evidence, inadmissible if direct proof can be produced. On the contrary, there are cases wherein, without any apparent recognition of a problem, the inference was allowed notwithstanding testimony directly on the same subject.[70] And we think the rule for which appellant contends would produce something of an anomaly because it would authorize the inference where the prosecution's case is relatively weaker—and where the effect of the inference would be more telling—but would prohibit it where the case against the accused is already strong.

■ We also reject appellant's claim that the trial court's instructions on this score shifted the burden of proof to appellant. With us, the principle under consideration is a matter of permissible inference at the jury's discretion,[71] rather than a compelled inference like a presumption,[72] and this distinction is significant. Dealing, in Bray v. United States,[73] with the argument that a similar instruction imposed upon the accused the burden of explaining his possession, we said:

> But the jury was not told to draw the inference *unless* appellant had failed to explain how he acquired the car. Rather, the instruction properly noted that, although appellant's guilt *might* be inferred from his possession of the stolen car, the jury could not draw such an inference if he had satisfactorily explained his possession. Moreover, immediately after explaining the inference based upon possession, the instruction went on to state that the jury should not infer guilt from appellant's failure to take the stand. We think that, fairly read, the instruction did not place the burden of explaining possession upon appellant.[74]

■ Our situation is similar, and we conclude that the trial judge's instructions remained faithful to the governing considerations. The judge had already charged on the presumption of innocence, declaring that the presump-

69. McNamara v. Henkel, 226 U.S. 520, 525, 33 S.Ct. 146, 57 L.Ed. 330 (1913).

70. See, *e.g.*, Smith v. United States, *supra* note 64, 123 U.S.App.D.C. at 260, 359 F.2d at 244; McAbee v. United States, *supra* note 64, 111 U.S.App.D.C. at 76, 294 F.2d at 705. See also Gilbert v. United States and Edwards v. United States, both *supra* note 64.

71. Robertson v. United States, *supra* note 64, 124 U.S.App.D.C. at 310–311, 364 F.2d at 703–704; Travers v. United States, *supra* note 64, 118 U.S.App.D.C. at 278, 335 F.2d at 700; McKnight v. United States, *supra* note 64, 114 U.S.App.D.C. at 41, 309 F.2d at 661; Bray v. United States, *supra* note 64, 113 U.S.App.D.C. at 140–141, 306 F.2d at 747–748; McAbee v. United States, *supra* note 64, 111 U.S.App.D.C. at 77, 294 F.2d at 706; Wright v. United States, *supra* note 64,

89 U.S.App.D.C. at 71, 189 F.2d at 700; Tractenberg v. United States, *supra* note 64, 53 U.S.App.D.C. at 398–399, 293 F. at 478–479. *Cf.* Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L. Ed. 350 (1946).

72. "The distinction between a presumption and an inference is subtle, but not unreal. A presumption, sometimes called a presumption of law, is an inference which the law directs the jury to draw if it finds a given set of facts; an inference is a conclusion which the jury is *permitted*, but not compelled, to draw from the facts." Bray v. United States, *supra* note 64, 113 U.S.App.D.C. at 140, 306 F.2d at 747 (emphasis in original).

73. *Supra* note 64.

74. 113 U.S.App.D.C. at 141, 306 F.2d at 748 (emphasis in original).

tion remained with appellant throughout the trial until guilt was established beyond a reasonable doubt.[75] He had also informed the jury that the Government at all times had the burden of proving appellant's guilt beyond a reasonable doubt,[76] an admonition sprinkled freely throughout the charge. Three times he told the jury, not that it *must*, but that it *might*, infer guilt if the evidence afforded no satisfactory explanation for appellant's possession of the watches and penknife. In line with appellant's theory, the judge also specifically admonished the jury that if appellant found these items in the street, as he claimed, he could not be convicted of the offenses charged. And while here, unlike *Bray*, appellant testified in his own behalf, the trial judge made clear to the jury that an acceptable explanation of the possession could be forthcoming, not necessarily from appellant's lips, but from "the facts and circumstances brought out at the trial." We are unable to perceive how, in the context of the entire charge, the instruction on inference could have generated the feeling that somehow, on that particular issue, the burden of persuasion became transferred from the Government to appellant.

 Advancing a somewhat related claim of error, appellant focuses upon a single paragraph of the instruction relative to the inference, where the trial judge stated:

> If the defendant's explanation of the possession of the property is in your opinion truthful, if it is consistent, if it is apparently honest, if it is not contradicted, if it is the same at all times, then if it has the indicia of truthfulness, then the possession by the defendant may not be a basis for an inference of guilt.

Reading the court's charge on the inference as an entirety, it seems clear that, having instructed the jury as to the circumstances under which they would be authorized to infer appellant's guilt from possession of the watches and the penknife, the trial judge at this point was enumerating contingencies under which they would not have that authority. This is made plainer by the paragraph of the charge immediately following:

> But if it is not explained to your satisfaction you are permitted but not required in that event to find the defendant guilty of the offense.

And certainly if the conditions listed in the court's statement first quoted were found by the jury to exist, there would be no warrant for inferring appellant's guilt.

 We do, however, share appellant's concern to the extent that the court's language is susceptible to the interpretation that the inference could be avoided only if appellant's explanation met the criteria the court mentioned. While an unexplained or unsatisfactorily explained possession of freshly stolen property is prerequisite to any utilization of the inference, fundamental principles exclude the idea that the inference can be destroyed only by a wholly satisfactory explanation by the accused. For the accused has no burden of persuasion; rather, any reasonable doubt as to his guilt, however arising, demands his acquittal, whether or not there is but an unsatisfactory explanation, or indeed no explanation at all.

On the other hand, whatever one might endeavor to read into the court's language when scrutinized apart from the remainder of the charge, we cannot view it in isolation or assume that the jury did. And when we look to the rest of the charge, we find full instructions on the presumption of innocence, the Government's comprehensive burden of

---

75. Compare Wright v. United States, *supra* note 64, 89 U.S.App.D.C. at 70, 189 F.2d at 699; Tractenberg v. United States, *supra* note 64, 53 U.S.App.D.C. at 399, 293 F. at 499.

76. Compare Tractenberg v. United States, *supra* note 64, 53 U.S.App.D.C. at 399, 293 F. at 499.

proof beyond a reasonable doubt, and the jury's complete freedom to reject the inference despite the establishment of its prerequisites,[77] including of course an unsatisfactory explanation for highly suspicious possession. Viewed in total context, then, we conclude that the single passage upon which appellant dwells could hardly have misled the jury.[78]

 We have a rather clear idea of the frequency with which the judges of the District Court are called upon to charge juries on this aspect of the law, and an acute awareness of the pitfalls encounterable in that undertaking. To the end that the judges and the practicing bar may be assisted in this regard, and incidental controversies may be held to a minimum, we set forth in an appendix to this opinion a form of instruction which may serve as a model, not only in robbery cases, but by adaptation in the prosecution of any larceny-type offense. And we commend to the serious consideration of all who may be interested the principles we have endeavored to articulate therein.

Affirmed.

## APPENDIX

### INSTRUCTION ON THE INFERENCE OF GUILT OF ROBBERY FROM THE DEFENDANT'S UNEXPLAINED POSSESSION OF PROPERTY RECENTLY STOLEN IN THE ROBBERY

In weighing the evidence adduced at this trial, you may consider the circumstance, if you find that it is established beyond a reasonable doubt, that the defendant had the exclusive possession of property specified in the [_____ count of the] indictment, recently after that property was stolen in the robbery alleged therein. You are not required to draw any conclusion from that circumstance, but you are permitted to infer, from the defendant's unexplained or unsatisfactorily explained possession of the recently stolen property, that the defendant is guilty of the offense, if in your judgment such an inference is warranted by the evidence as a whole.

The defendant's possession of the recently stolen property does not shift the burden of proof. The burden is always upon the Government to prove beyond a reasonable doubt every essential element of an offense before the defendant may be found guilty of that offense. Before you may draw any inference from the defendant's unexplained or unsatisfactorily explained possession of property stolen in the robbery charged in the [_____ count of the] indictment, you must first find that the Government has proved beyond a reasonable doubt every essential element of that offense, and as to those elements I have already instructed you. If you should find that the Government has proved beyond a reasonable doubt every essential element of that offense, the defendant's unexplained or unsatisfactorily explained possession of the recently stolen property is a circumstance from which you may find, by the process of inference, that the defendant was the person [one of the persons] who stole it. In short, if the Government has proved beyond a reasonable doubt every essential element of the offense of robbery charged in this case, then, but only then, the defendant's unexplained or unsatisfactorily explained possession of property stolen in that robbery permits you to infer that the defendant was the robber [one of the robbers].

The word "recently," as used in these instructions, is a relative term, and it has no fixed meaning. Whether property may be considered as recently stolen depends upon all the facts and circum-

---

77. "Had no evidence been introduced by the defendant, it still would have been within the province of the jury to have acquitted him, as it would have been within their province to convict him." Tractenberg v. United States, *supra* note 64, 53 U.S.App.D.C. at 399, 293 F. at 479.

78. Compare Blunt v. United States, 131 U.S.App.D.C. 131, at 306, 404 F.2d 1283, at 1290 (1968).

stances shown by the evidence. The longer the period of time since the theft of the property, the more doubtful becomes the inference which may reasonably be drawn from its unexplained or unsatisfactorily explained possession.

In considering whether the defendant's possession of the recently stolen property has been satisfactorily explained, you must bear in mind that the defendant is not required to [take the witness stand or] furnish an explanation. His possession may be satisfactorily explained by other circumstances shown by the evidence independently of any testimony by the defendant himself. And even though the defendant's possession of the recently stolen property is unexplained or is not satisfactorily explained, you cannot draw the inference under consideration if on the evidence as a whole you have a reasonable doubt as to his guilt.

It is exclusively within your province to determine (a) whether property specified in the [____ count of the] indictment was stolen in the robbery alleged and, if so, (b) whether while recently stolen it was in the exclusive possession of the defendant and, if so, (c) whether the possession of the property has been satisfactorily explained, and (d) whether the evidence as a whole warrants any such inference.

If you should find that the Government has proved beyond a reasonable doubt every essential element of the offense of robbery charged in the [____ count of the] indictment, and that property specified in the [____ count of the] indictment was stolen as alleged, and that, while recently stolen, it was in the exclusive possession of the defendant, you may draw, but you are not required to draw, from these circumstances the inference that the defendant is guilty of the offense of robbery charged in the [____ count of the] indictment, unless his possession of the property is satisfactorily explained by other circumstances shown by the evidence, or unless on the evidence as a whole you have a reasonable doubt as to his guilt.

If you should find that the Government has failed to prove beyond a reasonable doubt every essential element of the offense of robbery charged in the [____ count of the] indictment; or if you should find that the Government has failed to prove beyond a reasonable doubt that property specified in the [____ count of the] indictment was in the exclusive possession of the defendant while recently stolen; or if the defendant's possession of the stolen property is satisfactorily explained by other circumstances shown by the evidence; or if, on the evidence as a whole, you have a reasonable doubt as to the defendant's guilt; then, in any one or more of these events, you must find the defendant not guilty of the offense of robbery charged in the [____ count of the] indictment.